**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| **LAURA HILL** )<br>**4452 Powhatan Crossing** )<br>**Williamsburg, VA 23188** )<br> )<br>*Plaintiff*, )<br> )<br>v. )<br> )<br>**JAMESTOWN-YORKTOWN** )<br>**FOUNDATION** )<br>**200 Hawks Nest Drive** )<br>**Williamsburg, VA 23185** )<br> )<br>*Defendant.* )<br> ) | **Case No.:**  4:18cv137 |

## COMPLAINT

### Preliminary Statement and Introduction

This is a civil action by Plaintiff Laura Hill against Defendant the Jamestown-Yorktown Foundation ("the Foundation" or "JYF")  for monetary relief for injuries Plaintiff Hill sustained as a result of race discrimination, religious discrimination, age discrimination, retaliation, and  a hostile work environment to which she has been subjected while employed at the Jamestown-Yorktown Foundation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII") and the  Age Discrimination in Employment Act, 29 U.S.C.  § 623(a)(1) ("ADEA").

Defendant the Jamestown-Yorktown Foundation (the "Foundation") is a non-profit,

1

educational institution funded by private donors, ticket sales and the Commonwealth of Virginia, located in Williamsburg, Virginia.   The Foundation operates two living history museums: Jamestown Settlement to promote an understanding and awareness of the early history, settlement, and development of the United States through the convergence of Powhatan Indian, English, and West Central African cultures and the American Revolution Museum at Yorktown to promote an understanding of the Revolutionary War.  American Evolution is a sub-agency of the Jamestown-Yorktown Foundation  and is headquartered at Jamestown Settlement.  American Evolution is organizing the 2019 commemoration of the 400th anniversary of the arrival of the first recorded Africans in English North America, the first representative assembly in English North America, the first official English Thanksgiving in North America and the recruitment of English women in large numbers to Virginia.

The Foundation has a history of discriminating against its African American employees in hiring, selections for full-time positions, promotions, benefits of employment, and discipline. Plaintiff Hill and African American employees at the Foundation endure systemic discrimination based on race which permeates every facet of employment, including training, professional development, disparate treatment in work hours and scheduling, advancement opportunities, accommodations to attend religious services, disparate treatment in discipline, harassment and unsafe work environment. The disparities in selections for full-time positions and promotions are due in part to discrimination by managers and hiring officials and lack of oversight exercised by human resources staff.

On December 31, 2017, the Foundation had approximately 400 employees.  Less than ten percent of the Foundation's employees are African American, despite that fact that African Americans comprise approximately twenty percent of the population in Virginia and

approximately forty-three percent of the Hampton Roads, Virginia region, from where the Foundation pulls it staff. Further, more than fifty percent of African Americans employed at the Foundation work as custodians, grounds maintenance workers or gift shop clerks, and there are no African American managers or senior level managers in policy making positions at the Foundation. As of December 31, 2017, approximately seventy-five percent of the Foundation's African American full-time staff worked as custodians and grounds maintenance workers. When full-time positions become available in areas other than custodians, grounds maintenance workers, and gift shop clerks, desired Caucasian applicants are identified, and intentional discriminatory actions are taken to exclude or not select qualified African American candidates. When the desired Caucasian candidate has no experience at the Foundation, and the African American candidate has experience and meets the educational requirements, suddenly experience and education are not important in the selection decisions. When an African American candidate has the preferred educational qualifications and the preferred Caucasian candidate does not, suddenly the preferred educational qualifications are not important. When an African American candidate has the required experience but not the preferred educational qualifications, the Foundation will only consider a candidate with the preferred educational qualifications. When the African American candidate has more experience than the desired internal Caucasian candidate, the Foundation will groom the internal Caucasian candidate to provide work opportunities to gain experience and provide training, so that the Caucasian candidate qualifies for the position. As a result of blatant acts of discrimination in hiring and selections for full-time employment and promotions, African American employees at the Foundation are largely relegated to part-time and menial positions, while Caucasian employees receive full-time positions and opportunities for growth and professional development.

3

## Jurisdiction and Venue

1.      The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as the matter contains a federal question under 42 U.S.C. § 2000.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(1) and (b)(2),  as the events and omits giving rise to Plaintiff's claims occurred in this judicial District and Defendant may be found in this District.

3.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## Parties

4.      Plaintiff Laura Hill ("Hill" or "Plaintiff") is a fifty-four-year-old (DOB June 1964) African American Christian female, a citizen of the United States, and a resident of the Commonwealth of Virginia.  She was employed by the Foundation from March 7, 2007 until October 23, 2018, when she was terminated in her 12th year of employment. At all times relevant to this matter, Plaintiff was an employee of the Foundation.

5.      Defendant the Jamestown-Yorktown Foundation is an educational institution funded in part by the Commonwealth of Virginia.

## Factual Background

6.      Plaintiff Hill began employment at the Jamestown-Yorktown Foundation on March 7, 2007 as a museum program assistant in the On-Site Education department.  She has a Bachelor of Arts degree in Mass Media Relations and has more than twenty years of relevant work experience. From October 2011 through the October 23, 2018, Plaintiff Hill worked as a part-time historical interpreter in the Interpretive Services department. Throughout her tenure at the Foundation, Plaintiff Hill performed her job in an exceptional manner.

7.      From 2011 to 2012, Plaintiff Hill worked part-time as both a historical interpreter and a museum education assistant. As a part-time historical interpreter, Plaintiff Hill was assigned to the James Fort interpretive site.  She was terminated from her historical interpreter position in December 2011 by her supervisor, Karen Templin, after requesting time off due to illness and to care for her thirteen-year-old son, who had been diagnosed with pneumonia.

8.      In January 2012, Plaintiff Hill met with Mr. Homer Lanier and Ms. Cindy Daniel, interpretive managers, and complained that she was unfairly terminated. On April 1, 2012, she was rehired as a historical interpreter and was reassigned to the Powhatan Indian Village interpretive site to present 17th century costumed interpretation in Powhatan Indian clothing.  Ms. Hill worked as a historical interpreter in the Powhatan Indian Village interpretive site until September 30, 2018.

9.      In the Powhatan Indian Village interpretive site, Plaintiff Hill reported to a Caucasian female supervisor, Ms. Lavin/Helmick.  Plaintiff Hill was one of approximately eighty employees on the interpretive staff and, from 2013 to 2018, the only African American employee. Shortly after she was hired as a part-time interpreter, Plaintiff Hill observed that she was not provided the same training that other interpretive staff received, and she was scheduled for fewer hours of work than her Caucasian part-time co-workers.

10.     On July 27, 2012, Plaintiff Hill complained to managers that her immediate supervisor, Ms. Lavin/Helmick, failed to train her according to Virginia state mandated training policies and under-scheduled her to work.  Mr. Lanier, interpretive manager, sent an email to Plaintiff Hill dated September 21, 2012 stating that he counseled and re-trained Ms. Lavin/Helmick and the interpretive supervisors.  Beginning in July 2013 and continuing through December 2014, Plaintiff Hill reported that she was being subjected to racial discrimination, disparate treatment, and a hostile work environment created by Ms. Lavin/Helmick.  In February 2014, Plaintiff Hill

5

filed charges with the EEOC, charge No. 437-2013-01205, and on January 1, 2015, Ms. Lavin/Helmick was reassigned to another interpretive site. Mr. Frank Hardister became Plaintiff's supervisor after Ms. Lavin/Helmick.

**Non-Selections**

11.     In July 2015, Plaintiff Hill applied for a full-time position as a historical interpreter at the Foundation, where she had worked as a part-time interpreter for three years and met the preferred educational requirements.  In August 2015, Cindy Daniel, interpretive manager, informed Ms. Hill that she was not selected for an interview due to her lack of experience working in the Encampment interpretive site.  The agency hired a Caucasian male, Mr. Saniga, in his twenties, who did not meet the preferred educational requirements and had worked at the Encampment site for less than six months.

12.     In March 2016, Plaintiff Hill applied for a full-time position as a historical interpreter at the Foundation, where she had worked as a part-time interpreter for four years at that time.  Plaintiff Hill met the preferred qualifications and was interviewed for one of four advertised positions for a full-time historical interpreter in April 2016 by a panel that included Ms. Sally Stooks, interpretive supervisor, and Mr. Homer Lanier, interpretive manager. In April 2016, the Foundation hired four staff members, who were all Caucasian.  Ms. Lauren Monark, a Caucasian female in her mid-20s who was employed at the Foundation as a part-time volunteer coordinator but had not been employed as a historical interpreter at the Foundation, was hired.  Ms. Monark's parents were major financial donors to the Foundation.

13.     In April 2017, the Foundation announced a full-time historical interpreter position in the Powhatan Indian Village interpretive site.  Plaintiff Hill applied for the full-time position as a historical interpreter in the Powhatan Indian Village, where she had worked as a part-time

interpreter for five years.  Plaintiff Hill was not selected for the position. The Foundation hired two Caucasian females. Ms. Alicia Klimenko, a Caucasian female in her mid-20s who had not worked as a historical interpreter in the Indian Village and did not meet the preferred educational requirements, was hired  After the selection of Ms. Klimenko, Plaintiff Hill met with Mr. Hardister and Ms. Templin in June 2017 to discuss her non-selection.

14.     In January 2018, Plaintiff Hill applied for a full-time media relations specialist position.  Plaintiff Hill met the preferred qualifications and was not selected for an interview.  On February 13, 2018, Plaintiff Hill met with Ms. Barbra Hoffman, human resource manager, Mr. Frank Stovall, deputy director for administration, and Mr. Peter Armstrong, Museum Operations Director, to discuss her non-selection for an interview.  Plaintiff Hill requested the criteria for interview selection and found that the criteria differed from the vacancy announcement. The areas of Plaintiff Hill's strengths had been eliminated from the criteria. Furthermore, new qualifications that were not included in the vacancy announcement and Plaintiff Hill had not included on her application were added.  Mr. Homer Lanier, interpretive manager, and Ms. Barbra Hoffman, human resources manager, were on the hiring committee and were aware that Ms. Hill had filed an EEO complaint in November 2017.  The Foundation hired a younger Caucasian female.

15.     In January 2018, Plaintiff Hill applied for a part-time assistant curator position and was denied an interview for the position. On September 13, 2018, Ms. Hoffman informed Plaintiff Hill that the Foundation only interviewed applicants that met the preferred educational requirement, a master's degree, which Plaintiff Hill did not have.   The Foundation hired a Caucasian female.

16.     In March 2018, a full-time historical position was advertised. Mr. Russell Reed and Plaintiff Hill applied for the position.  Mr. Reed, a Caucasian male in his mid-20s, had worked as

a seasonal part-time historical interpreter from 2013 to 2016.   In December 2016, Mr. Reed relocated out of state for six months. In June 2017, Mr.  Reed returned, and Mr. Hardister began grooming Mr. Reed as a part-time historical interpreter.   Plaintiff Hill and Mr. Reed met the preferred qualifications and were scheduled for initial interviews.   Plaintiff Hill was denied a second interview, but Mr. Reed was scheduled for a second interview.   The Foundation selected four Caucasian staff members for vacant positions, including Mr. Reed, a younger Caucasian male, who had been groomed by Mr. Hardister for the position since July 2017.   In May 2018, Ms. Hoffman, human resources manager, sent Plaintiff Hill an email with a  list of false and misleading reasons why Plaintiff Hill was not selected for a second interview.   Plaintiff Hill complained that the decision to not interview and hire her was racially motivated. Plaintiff Hill was qualified and approved to develop training materials and to lead classes to train the Foundation's full-time historical interpreters but was not deemed qualified to join their ranks.

17.    In April 2018, the Foundation announced a full-time position as an Assistant Supervisor for the Powhatan Indian Village, where Plaintiff Hill had worked at the time for six years.  Plaintiff Hill met the preferred qualifications for the position and was interviewed for the position.  The Foundation hired Mr. Saniga, a Caucasian male and former Foundation employee, who was approximately thirty years old.  Mr. Saniga did not possess the preferred educational requirements.

**Targeted Discipline and Harassment**

18.    On August 13, 2016, Plaintiff Hill left work early after suffering heat exhaustion due to working outside in a heat-index over 105 degrees. Plaintiff Hill rested at home for two days and did not report to work on August 15, 2016 as scheduled.  Despite her managers' knowledge

of her medical condition and the mitigating circumstances, Plaintiff Hill was disciplined as a "no show" for not calling in when sick.  Three "no shows" are grounds for termination.

19.     In November 2016, Plaintiff Hill's immediate supervisor, Mr. Hardister, approved Plaintiff Hill's plans to research and write a report about Seventeenth Century tobacco use by three cultures, Powhatan Indian, English and Angolan.   Plaintiff Hill successfully completed the research report and in 2017, was approved to develop training materials (3-bay form and clay pipe material culture form).

20.     In March 2017, Plaintiff Hill, as a private citizen, submitted an editorial to the Daily Press newspaper in Newport News, and the editorial was published on March 5, 2017. On March 29, 2017 Plaintiff Hill was reprimanded for "Unauthorized contact with Media."

21.     On March 29, 2017, Plaintiff Hill reported to work.  After the conclusion of her shift, at 4:39 p.m., Ms. Helmick falsely reported Plaintiff Hill as a "no show" for work even though she knew Plaintiff Hill had reported to work and completed her shift.  On March 31, 2017, Mr. Hardister confirmed verbally and in writing that this did not constitute a "no show."

22.     On July 17, 2017, Plaintiff Hill appeared at work as scheduled and reported to her site.  The supervisor and watch commander were absent.  Plaintiff Hill set up an interpretation area and began interpreting to visitors.  Ms. Helmick reported to Ms. Daniel that Plaintiff Hill was a "no show."  Ms. Daniel called Plaintiff Hill's home, per policy.  Plaintiff Hill came inside for a restroom break at approximately 1:00 p.m. and learned from Ms. Daniel that Ms. Helmick reported her as a "no show."  Plaintiff Hill showed Ms. Daniel her time-card to verify that she had reported to work, as scheduled.

23.     In July 2017, Plaintiff Hill requested alterations to the fringe of the collar of her work costume, which had been damaged during laundering.   Plaintiff Hill was charged with

"Damage to State Property," a level 2 Department of Human Resource Management (DHRM) offense in the Foundation's interpretive services training manual, even though she did not willfully act to destroy her costume.

24.     On July 31, 2017, Plaintiff Hill entered the Historical Clothing Shop on site at approximately 5:30 p.m. to see if the repairs to her costume were complete.  The Foundation charged her with "Unauthorized Entry," a level 3 DHRM offense.  This occurred even though the Interpretive Services training manual does not include a policy pertaining to unauthorized personnel or unauthorized entry in the Historical Clothing Shop.  Plaintiff Hill observed her Caucasian co-workers enter the Historical Clothing Shop at will without consequence.  There were no hours of operations posted on the Historical Clothing Shop door, the door was unlocked, and the Foundation was open for business from 9:00 a.m. to 6:00 p.m. at the time.

25.     On July 28, 2017, Plaintiff Hill was called into a meeting with her supervisor, Mr. Hardister, and was charged with "Excessive Absenteeism" and required to bring in a doctor's note for future absences.  There is no published policy that addresses absenteeism for wage staff; neither had excessive absenteeism been defined verbally by interpretive supervisors or managers.  Plaintiff Hill followed the required policy of notifying the department via the call-in line when she would be absent.  Most of Plaintiff Hill's absences were due to work-related illness.

26.     On July 30, 2017, Plaintiff Hill submitted the draft of the Seventeenth Century tobacco uses by Powhatan Indians, English and Africans training materials to Mr. Hardister, who failed to reply.  On July 30, 2017, Ms. Templin, interpretive manager, informed Plaintiff Hill that Mr. Hardister showed her the draft and confirmed that Mr. Hardister would review and give Plaintiff Hill feedback, then submit the items to Ms. Templin for approval.  Ms. Templin would review and give feedback or approve and submit to the Foundation curators for approval.  Between

August and October 29, 2017, Plaintiff Hill sent Mr. Hardister multiple emails regarding the status of the training materials, and he failed to reply, despite the interpretive supervisors' position description requiring supervisors to respond promptly to emails from their subordinate staff members.

27.     On August 16, 2017, Plaintiff Hill misread her schedule and did not report to work for a 9:00 a.m. to 2:45 p.m. shift.  The Foundation has a policy that requires supervisors to call employees who do not appear for their shifts.  Ms. Helmick did not call Plaintiff Hill, per policy. Plaintiff Hill called Ms. Helmick at approximately 1:15 p.m., and Ms. Helmick falsely claimed that she called Plaintiff Hill, but did not leave a message.  There was no record of Ms. Helmick's call. Plaintiff Hill reported the incident to Ms. Daniel and asked Ms. Daniel to check her number in the employee directory, which proved to be correct.  On August 28, 2017, Plaintiff Hill met with Mr. Hardister and Ms. Templin, assistant interpretive manager, and Plaintiff Hill complained that Ms. Helmick did not follow policy and had a history of deviating from policy in her dealings with Plaintiff Hill.  Plaintiff Hill stated she felt targeted by Ms. Helmick.  Ms. Templin, Ms. Helmick's supervisor, met with Ms. Helmick and asked if she called Plaintiff Hill when she did not appear at work on her scheduled day, and Ms. Helmick admitted to Ms. Templin that she did not call Plaintiff Hill.  This was the third "no show" incident that Ms. Helmick manufactured concerning Ms. Hill in the five months from March 2017 to August 2017.

28.     On September 26, 2017, during a staff meeting, Plaintiff Hill asked Mr. Hardister for the status of the tobacco training materials she had developed and submitted to him on July 30, 2017.  He responded that they were on his desk under a stack of papers.  Plaintiff Hill immediately emailed Mr. Hardister the documents facilitate his review and feedback.  Mr. Hardister did not respond to Plaintiff Hill's email.

29.     On October 19, 2017, Plaintiff Hill met with Mr. Hardister, Ms. Daniel and Ms. Hoffman, and Plaintiff Hill was issued a written warning for insubordination for an alleged historical clothing policy violation and asked to sign the written warning. Plaintiff Hill refused because the warning included false statements.   The Foundation's policy requires that Mr. Hardister inform Plaintiff Hill of historical clothing policy violations in writing by completing and issuing a standard form that includes the policy infraction and a compliance date, which Mr. Hardister failed to do.

30.     Plaintiff Hill was charged with a "Costume Violation" for wearing clear nail polish over a¼ inch white nail tip on October 19, 2017.  The Interpretive Services manual states, "Clear polish is permitted." Mr. Hardister did not inform Plaintiff Hill verbally or in writing that she was in violation of a costume policy until the October 19, 2017 meeting with Foundation managers, Ms. Hoffman and Ms. Daniel.

31.     The following day, October 20, 2017, Plaintiff Hill informed Ms. Hoffman, Mr. Hardister, Mr. Daniel, and Mr. Stovall, via email, that the written warning was retaliation for complaining of racial discrimination on October 16, 2017 and that she intended to file an EEO complaint.  Plaintiff Hill submitted a Freedom of Information Act request for all documents related to the written warning. After receiving the documentation and noting that it did not support the discipline, she notified Ms. Hoffman, Mr. Hardister, Ms. Daniel and Mr.  Stovall that the FOIA documentation supported her retaliation charge and she was moving forward with filing an EEO complaint.

32.     On October 30, 2017, Plaintiff Hill sent Mr. Hardister an email about his failure to provide constructive feedback regarding the training materials she had researched, developed and sent him on July 30, 2017.  Plaintiff Hill sent a copy of the email to Mr. Hardister's supervisors,

Ms. Templin and Ms. Daniel.   Mr. Hardister replied, via email, approximately one hour later informing Plaintiff Hill that the training materials with his feedback have been put in her employee mailbox. In December 2017, Plaintiff Hill completed all revisions and re-submitted to Mr. Hardister, who approved and submitted the training materials to Ms. Templin.  Plaintiff Hill's training materials were approved by Foundation curators in January and February 2018.

33.     On November 14, 2017 and November 22, 2017 , 2017, Plaintiff Hill filed a EEO complaint, case No. 1117-017, of racial discrimination, retaliation and harassment with the Virginia Office of Equal Employment and Dispute Resolution naming Mr. Hardister, Powhatan Indian Village interpretive site manager; Ms. Helmick, James Fort interpretive site manager; Ms. Daniel, interpretive manager; Ms. Hoffman, human resources manager, and Mr. Stovall, deputy director of administration, as discriminating officials.  Ms. Hoffman was notified of Plaintiff Hill's EEO complaint on December 8, 2017.

34.     In December 2017, Plaintiff Hill asked Mr. Hardister if she could share the seventeenth century tobacco use training materials at the January 2018 staff meeting.    Mr. Hardister denied her requests and stated that she had to wait until the Foundation curators gave the materials curatorial approval.

35.     In January 2018, Plaintiff Hill was assigned to attend a training class led by Mr. Reed, who been approved in late 2017 to develop training materials and a training class on making arrows.  Mr. Reed distributed his training materials which were not approved by Ms. Templin or the curators.  Mr. Reed stated that he prepared the 3-bay training form "last night."  After the training class, Plaintiff Hill reported to Mr. Hardister that Mr. Reed led a training class with training materials that were not approved by curators, yet Plaintiff Hill's request in December 2017 to share training materials she had developed at the staff meeting in January 2017 was denied.

13

36.     In January and February 2018, Plaintiff Hill's training materials were approved by Foundation curators.  On February 21, 2018, Plaintiff Hill wrote a proposal to develop a training class to train staff, which was approved by the Foundation's Training department and scheduled for June 21, 2018 and June 26, 2018. Between February and June 2018, Plaintiff Hill taught herself to successfully make replicas of seventeenth century clay tobacco pipes for interpretation of tobacco in the Powhatan Indian Village site and for the June 21 and June 26, 2018 tobacco training class.

37.     On March 15, 2018, Plaintiff Hill received a "5 day Suspension and 9 months Probation" after she reported to her supervisor that she had missed the first hour of a 3-hour training class on February 23, 2018.  Plaintiff Hill was delayed because she was at a local hospital visiting her husband, who was recovering from surgery.

38.     In April 2018, Mr. Hardister reviewed and approved of Plaintiff Hill's tobacco training class outline, which included class room instruction, modeling tobacco interpretive demonstrations and group practice of hands-on interpretation.   Plaintiff Hill developed and designed a power point demonstration for the tobacco training class in May and June 2018, which was approved by curator, Ms. Nancy Egloff.

39.     On April 4, 2018, Plaintiff Hill filed an EEO complaint, case No. 437-2018-00703, of racial discrimination, retaliation and harassment with the Equal Employment Opportunity Commission – Norfolk local office naming Mr. Hardister, Powhatan Indian Village interpretive site manager; Ms. Helmick, James Fort interpretive site manager; Ms. Daniel, interpretive manager; Ms. Hoffman, human resources manager, Mr. Stovall, deputy director of administration, as discriminating officials.  Ms. Hoffman was notified of Plaintiff Hill's EEO complaint on or about April 10, 2018.

40. On April 26, 2018, Plaintiff Hill met with her supervisor, Mr. Hardister, and Ms. Daniel, interpretive manager, to receive her 2018 annual performance evaluation. Plaintiff Hill noted that Mr. Hardister had deliberately omitted her major accomplishment during the performance cycle, which involved writing and preparing pilot programs for a proposal that she initiated, researched and wrote to develop an African Cultural Heritage (ACH) interpretive site at Jamestown Settlement to commemorate the 400th anniversary of the arrival of the first Africans in 2019. Plaintiff Hill's proposal was approved by Foundation managers on April 17, 2018. Plaintiff Hill also noted that Mr. Hardister had included an alleged policy violation that had occurred and had been addressed during the 2017 performance evaluation cycle, wrongful disciplinary actions that were under investigation by state and federal EEO offices and assigned her a "Below Contributor" rating. Plaintiff Hill's Caucasian co-workers' 2018 annual performance evaluations included their major accomplishments, while Plaintiff Hill's 2018 performance evaluation included primarily routine and menial tasks, inaccurate and misleading information to diminish her achievements and to create a false narrative about her achievements to justify a low rating and to facilitate termination.

41. On or about May 9, 2018, Plaintiff Hill filed an amendment to EEO complaint, case No. 437-2018-00703, with the Equal Employment Opportunity Commission – Norfolk local office alleging retaliation and harassment and naming Mr. Hardister, Powhatan Indian Village interpretive site manager as a discriminating official. Ms. Hoffman was notified of Plaintiff Hill's EEO complaint on or about May 11, 2018.

42. The Foundation hired Martin Saniga in June 2018, as the assistant supervisor in the Powhatan Indian Village, and he was scheduled to begin work, off-site, on June 24, 2018. On June 21, 2018, Plaintiff Hill successfully led a training class of 21 full-time and part-time staff members,

including historical interpreters, group educators, and outreach instructors, and her class and skills were rated excellent by most staff members.  She met with Mr. Hardister and Ms. Templin, assistant interpretive manager, on June 22, 2018 to discuss feedback from Plaintiff Hill's initial training class.  Mr. Hardister commented that he would like to register Mr. Saniga to attend the June 26, 2018 training class but was unable to.

43.     On June 26, 2018, Plaintiff Hill reported to work and saw Mr. Saniga working in the Indian Village in street clothes and flip flops, which is not consistent with the historical clothing policy.  However, he did not receive a historical clothing policy infraction.  Mr. Saniga approached Plaintiff Hill while she was making tobacco pipes. Mr. Saniga stated that Mr. Hardister had discussed with him the tobacco research and training materials she had developed.  Later that day, Plaintiff Hill reported to a classroom for the training class and worked with training staff to set up for the class, which began at 3:00 p.m.  Mr. Saniga was not registered but walked in and sat in the front of the class. He later disrupted the class by failing to follow the directions provided by Plaintiff Hill, attempting to re-direct the focus of the training class from tobacco use by three cultures to a lecture about the Powhatan Indians, and undermining Plaintiff Hill's authority as the class instructor.

44.     Three other Caucasian employees, Ms. Felicia Abrams, education officer, Ms. Heather Power, historical interpreter, and Ms. Julie Fox, group educator, went along with Mr. Saniga's plan to disrupt the training class, causing Ms. Heather Stillwell, the training coordinator, to intervene repeatedly.  During the training class, Ms. Stillwell stated that Mr. Saniga had not followed Plaintiff Hill's directions.  Later, Ms. Stillwell told Plaintiff Hill that she had met with Ms. Hoffman, the human resources manager, on June 27, 2018 to discuss her concerns about Mr. Saniga's disruptive behavior.  Most of the seventeen participants gave favorable ratings of the

16

class and Plaintiff Hill's teaching ability.   Mr. Saniga gave Plaintiff Hill poor ratings on her performance and falsely stated that class objectives were not met and that he would not recommend the class to other staff members.   The low ratings were designed to discredit Plaintiff Hill and prevent Plaintiff Hill from leading future training classes to impede her professional growth and development.   On September 28, 2018, Mr. Hardister sent Mr. Saniga to observe a program Ms. Triantafillos, a Caucasian co-worker was leading.   After the program, Ms. Triantafillos stated that Mr. Saniga did not disrupt the program or speak; he quietly observed.

45.     The following day, on June 27, 2018, Plaintiff Hill reported to her supervisor, Mr. Hardister, and Interpretive Managers Ms. Templin and Ms. Daniel that she felt disrespected by Mr. Saniga and his group's behavior, which was disruptive and inconsistent with the Foundation's harassment policy.   Ms. Daniel responded via email on June 30, 2018, stating that she was turning the matter over to the human resource office.   Despite another written request from Plaintiff Hill on or about July 23, 2018, there was no response from Ms. Daniel, Mr. Lanier, Ms. Hoffman, or Mr. Stovall regarding Mr. Saniga's disrespectful and harassing behavior towards Plaintiff Hill.

46.     On July 5, 2018, Mr. Hardister assigned Plaintiff Hill to lead a cooking demonstration with an open fire outside during extreme temperatures (90 degrees heat index). Cooking demonstrations were not mandatory and were not done in early July 2018 due to the high heat index.   Mr. Saniga set up the cooking space and fire in direct sunlight, despite the shady cooking space, that is primarily used for cooking demonstrations, being available.   After working outside by the fire for approximately 75 minutes without a break, Plaintiff Hill became ill and asked co-worker Lynn Powell to alert Mr. Hardister.   Mr. Hardister called the Emergency Medical Technicians (EMTs) who determined that Plaintiff Hill needed to be taken to a local emergency room, where Plaintiff Hill was diagnosed with heat-related illness and chest pains.   On or about

July 20, 2018, Ms. Daniel, interpretive manager, sent an email to Mr. Ray Hoyle, safety and security manager, stating that the duty officer and interpretive site supervisors had the authority to take the preventive measure of suspending cooking demonstrations due to the inclement weather. The cooking demonstration was not suspended until after Ms. Hill suffered chest pains and heat-related illness.  On July 5, 2018, Ms. Abrams, education officer, was serving as the duty officer and Mr. Hardister and Mr. Saniga were the interpretive supervisors for the Powhatan Indian Village.

47.     On July 6, 2018, Plaintiff Hill followed the emergency physician's discharge instructions and called her primary care physician, who scheduled an appointment for July 9, 2018 and instructed Plaintiff Hill not to report to work until after the appointment. Plaintiff Hill returned to work on July 10, 2018 with medical restrictions until September 30, 2018.

48.     On July 18, 2018, Plaintiff Hill filed a complaint with Virginia Occupational Safety and Health Administration (VOSH).  On July 19, 2018, Ms. Maryella Mitchell, Regional Director, contacted the Foundation and called for an internal investigation.

49.     On July 24, 2018 and July 30, 2018, Mr. Ray Hoyle, the security and safety manager submitted findings of the internal investigation to Ms. Maryella Mitchell, VOSH Regional Director, and Plaintiff Hill. Plaintiff Hill found inaccurate and misleading information in the findings and reported the discrepancies to Ms. Mitchell and Mr. Hoyle on July 25, 2018 and July 31, 2018.  On August 15, 2018 VOSH inspectors conducted an on-site inspection at the Foundation's Jamestown Settlement museum.

50.     In September, 2018, Plaintiff Hill was completing the final stages of an evaluation report for an African Cultural Heritage (ACH) pilot program.  Plaintiff Hill initiated, researched, wrote and submitted a proposal for the ACH pilot program in November 2017.  Plaintiff Hill's

goals were to educate Foundation visitors about the first recorded Africans who arrived in Virginia in 1619, to commemorate the 400th anniversary of their arrival in 2019, and to help improve the Foundation's visitor demographics by attracting more diverse audiences.  Ms. Hill's ACH pilot program proposal was approved in April, 2018 and implemented between August 1 and August 31, 2018.  Plaintiff Hill joined the ACH pilot program development team on May 10, 2018 after Mr. Mark Howell, Education Director, met with Plaintiff Hill on May 2, 2018 and told her, verbally and in writing, that he wanted her to evaluate the ACH pilot program.

51.     On September 13, 2018, Mr. Howell sent Plaintiff Hill an email instructing her to stop working on the ACH evaluation report, stating that he was not aware of it and that it was not needed.  On September 14, 2018, Plaintiff Hill sent Mr. Howell copies of email exchanges she had with him on May 2, 2018 and August 30, 2018, in which she indicated that at the completion of the pilot program she would be preparing an evaluation report. She reminded Mr. Howell that he had attended a meeting on June 22, 2018 where she discussed and presented evaluation strategies to the ACH development team.  Plaintiff Hill made two requests to complete her evaluation report; Mr. Howell denied them both, indicating that he did not feel the report was needed. All members of the ACH development team were allowed to complete their responsibilities, except Plaintiff Hill.  Mr. Howell impeded Plaintiff Hill's growth and professional development by hindering her from completing her primary responsibility for the development team of the ACH pilot program, while allowing Plaintiff Hill's Caucasian ACH development team members to complete their responsibilities.

52.     On September 17, 2018, Mr. Hardister called Plaintiff Hill into a meeting with Cindy Daniel, interpretive manager, and Martin Saniga, assistant supervisor, to counsel her and to issue her a written reprimand, accusing her of circumventing Mr. Saniga.  The written reprimand

was based on inaccurate information reported to the supervisor by a staff member.   One of the dates indicated on the reprimand was a date Plaintiff Hill had not worked in the Powhatan Indian Village. Mr. Hardister did not follow the agency protocol of meeting with Plaintiff Hill to give her the opportunity to share her viewpoint, prior to the counseling meeting.

53.     On September 21, 2018, Plaintiff Hill was called into a meeting by Ms. Cindy Daniel and Mr. Homer Lanier, interpretive managers, and told that she was being removed from her part-time costumed historical interpreter position and reassigned to a new part-time position as a non-costumed interpretive tour guide, similar to Mr. Randy Flood at the Foundation's Yorktown museum.   The historical interpreter and interpretive tour guide positions had the same title, job number and core-level status.   However, the skill set was reduced, resulting in 28.5 fewer hours in October 2018, thereby reducing Plaintiff Hill's earned wages.   Plaintiff Hill shared her concerns with Ms. Daniel and Mr. Lanier, verbally and in writing on September 24, 2018, and indicated that the reassignment was a demotion.

54.     Leading visitor tours is one responsibility of the existing historical interpreter position and most veteran part-time and full-time historical interpreters have received training in leading tours. Plaintiff Hill requested that additional responsibilities be added to the interpretive tour guide position, so that it was consistent with the historical interpreter responsibilities Mr. Flood had at American Revolution Museum at Yorktown.  On September 24, 2018 Mr. Flood told Plaintiff Hill that he leads visitor tours and provides classroom instruction to visitors and costumed interpretation.   Plaintiff Hill also requested that her work hours be increased so that they were consistent with the work hours of other core-level historical interpreters.

55.     In October 2018, Plaintiff Hill sent multiple emails to Ms. Daniel to request a meeting to discuss her questions and concerns about the reassignment.   Ms. Daniel repeatedly

failed to answer the emails and became evasive.  Plaintiff Hill was relegated to stopping by Ms. Daniel's office for impromptu five to ten minute meetings between leading tours to try to get answers to her questions when Ms. Daniel was available.

56.   On October 18, 2018, Plaintiff Hill sent an email to Ms. Daniel to request to come in an hour early on October 23, 2018 for a meeting with Ms. Daniel to discuss her concerns about the reassignment.  Again, Ms. Daniel never replied to the emails or the phone calls that Plaintiff Hill made the morning of October 23, 2018.

57.   When Plaintiff Hill arrived at work on October 23, 2018, Ms. Daniel, Mr. Lanier, and Ms. Hoffman were waiting to meet with her.  During the meeting, Plaintiff Hill was told that her employment was being terminated because Plaintiff Hill had arrived for work an hour early on October 14, 2018 and led a visitor tour to four visitors, who had been told that there was an 10:00 a.m. tour and were waiting at the designated area.  The Foundation managers claimed that Plaintiff Hill inconvenienced others because she was scheduled to lead an 11:00 a.m. tour and another historical interpreter, Ms. Allen who had been a tour guide, was called to lead the 11:00 a.m. tour.

**Discrimination on the Basis of Religion**

58.   On March 23, 2016, Plaintiff Hill was called into a meeting with Mr. Hardister, her immediate supervisor, and Ms. Templin, assistant interpretive manager.  She was asked to sign a document agreeing to a new policy that required interpreters to work at least one Sunday a month. From 2012 to April 2016, Plaintiff Hill had requested Sundays off to attend religious services as her position as a part-time historical interpreter did not require her to work on Sundays.  Plaintiff Hill requested religious accommodations and wrote this request on the form.  Plaintiff Hill and Ms. Templin initialed the changes.

59.     In October 2017, Mr. Hardister granted Mr. Reed's request to not work on Sundays in November, but denied Plaintiff Hill's request and scheduled her to work Sunday, November 12, 2017 from 9:00 to 3:45 p.m. On December 27, 2017, Mr. Hardister distributed the January 2018 schedule.  Ms. Triantafillos, a Caucasian co-worker, requested and was granted every Sunday off in January 2018.  Plaintiff Hill was scheduled to work on Sunday, January, 14, 2018 from 1:00 p.m. to 5:00 p.m., which was also a holiday weekend.  Mr. Hardister distributed the February 2018 schedule on January 27, 2018. Mr. Reed, a younger Caucasian co-worker, requested and was granted every Sunday off in February 2018.  Plaintiff Hill was scheduled to work on Sunday, February 18, 2018 from 10:00 a.m. to 4:45 p.m.  Plaintiff Hill sent an email to Mr. Hardister asking to work from 1:00 p.m. to 5:00 p.m. to attend religious services on Sunday, February 18, 2018. Mr. Hardister denied her request.

60.     Mr. Hardister prepared schedules for the months of March, April, and May 2018, and Ms. Triantafillos, a Caucasian co-worker, requested and was granted every Sunday off in March, April, and May 2018. Plaintiff Hill was scheduled to work on Sunday March 11, 2018 from 8:30 a.m. to 2:15 p.m., Sunday, March 18, 2018 from 8:30 a.m. to 3:15 p.m.,  Sunday, April 8, 2018 from 8:30 a.m. to 3:45 p.m., Sunday, April 29, 2018 from 8:30 a.m. to 3:15 p.m.,  Mother's Day,  Sunday, May 13, 2018, from 8:30 a.m. to 3:45 p.m., and Sunday, May, 20, 2018 from 8:30 a.m. to 3:45 p.m.

61.     On May 17, 2018, Plaintiff Hill sent an email to Mr. Hardister asking to work from 1:00 to 5:00 p.m. to attend religious services on Sunday, May 20, 2018.  Mr. Hardister denied her request.  Plaintiff Hill sent an email to Mr. Hardister regarding the disparity in scheduling and the fact that Plaintiff Hill was denied Sundays off to attend religious services, while her co-workers' requests were granted, and she informed Mr. Hardister that she was being subjected to unfair

treatment.  Despite her complaint, Mr. Hardister continued to schedule Plaintiff Hill to work on Sundays.

62.     On May 27, 2018, Mr. Hardister distributed the June 2018 schedule.  Ms. Triantafillos, a Caucasian co-worker, requested and was granted every Sunday off in June 2018. Plaintiff Hill was scheduled to work on Sunday, June, 24, 2018 from 8:30 to 2:45 p.m.  On June 25, 2018, Ms. Triantafillos informed Plaintiff Hill that she had been requesting Sundays off to attend religious services. Plaintiff Hill informed Mr. Hardister that the Sunday scheduling policy represented unfair and biased treatment against her and requested that the policy be enforced equally.

63.     In August 2018, Plaintiff Hill and her Caucasian co-worker, Ms. Triantafillos, both requested accommodations to attend religious services.  In early August, 2018, she and Plaintiff Hill requested Sunday, September 16, 2018 off on the September 2018 PIV wish list. There were three historical interpreters, Mr. Mason, Ms.  Price, and Mr.  Vass, who indicated on the same wish list that they were available to work.  Mr. Hardister did not schedule Ms. Triantafillos or the three available historical interpreters to work on Sunday, September 16, 2018.  Mr. Hardister scheduled Plaintiff Hill to work from 10 a.m. to 4:45 p.m. on Sunday, September 16, 2018.  Plaintiff Hill did not work the first week of September 2018.  She returned to work on September 10, 2018, and on September 12, 2018, she sent Mr. Hardister an email requesting scheduling changes.

64.     Plaintiff Hill met with Mr. Hardister on September 13, 2018 and asked why her request to be off on September 16, 2018 was denied when other staff members were available to work.  Mr. Hardister indicated that her request was denied because she had not specified her reason for wanting September 16, 2018 off on the wish list.  However, the September 2018 wish list revealed there were several staff members who requested days off and had not specified their

reasons, yet their requests were granted, including Ms. Triantfillos, who had not specified a reason for requesting Sunday, September 16 off; however, her request was also granted, while Plaintiff Hill's request was denied.  On September 13, 2018, Plaintiff Hill modified her request and inquired about working an E4 shift (1:00 p.m. to 5:00 p.m.) so she could attend religious services and this request was denied as well. Plaintiff Hill then called three co-workers to find someone  to switch days off with her and was able to find a co-worker, Mr. Mason, who agreed to switch shifts with her, so she could attend religious services.

65.     On September 17, 2018, Mr. Hardister called Plaintiff Hill into a meeting with Cindy Daniel, interpretive manager, and Martin Saniga, assistant supervisor, to counsel her and to issue her a written reprimand for switching shifts, so she could attend religious services on Sunday, September 16, 2018 and attend an ACH meeting with Ms. Abrams on September 17, 2018.   Mr. Hardister did not follow the protocol of meeting with Plaintiff Hill and giving her the opportunity to share her viewpoint prior to the written reprimand.  Plaintiff Hill refused to sign the written reprimand.

## COUNT I

### Violation of Title VII of the Civil Rights Act of 1964,
### as amended, 42 U.S.C. § 2000e *et seq.*
### Discrimination on the Basis of Race

66.     Plaintiff Hill incorporates by reference the foregoing paragraphs as if fully stated herein.

67.      Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to discriminate against any individual with respect to her compensation, term, conditions, or privileges of employment, because of such individual's color, religion, sex,

age, national origin, or to limit, segregate, or classify her employees or applicants for employment opportunities, or otherwise adversely affect her status as an employee, because of the individual's race, color, religion, sex, age, or national origin.

68.     At all pertinent times, Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).   At all pertinent times, Plaintiff Hill was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

69.     Defendant, through its agents, discriminated against Plaintiff Hill on the basis of her race by failing to select her for vacant positions, subjecting her to discriminatory discipline, denying her training offered to her coworkers, denying her work hours and Sundays offer for religious services, and forcing her to work in unsafe conditions, as detailed above. Specifically, Plaintiff Hill was hired as a part-time historical interpreter and not selected for full-time positions that she applied for in August 2015,  April 2016, April 2017, March 2018, and April 2018 and Caucasian employees with less experience, less education and/or did not meet the qualifications for the positions were selected. In April 2017, the Foundation announced a full-time historical interpreter position in the Powhatan Indian Village interpretive site and Plaintiff Hill applied for the position and the Foundation selected two Caucasian females.  Ms. Klimenko, who is in her mid-20s, who had not worked as a historical interpreter in the Powhatan Indian Village was hired. In January 2018, Plaintiff Hill applied for a full-time media relations specialist position and was denied an interview for the position, and in February 2018, Plaintiff Hill applied for a part-time assistant curator position and was denied an interview for the position.  The Foundation selected Caucasian individuals for both the media relations and assistant curator positions.  In March 2018, the Foundation advertised four full-time historical positions. Plaintiff Hill and Russell Reed, a

Caucasian male who previously volunteered at the Foundation and worked as a seasonal part-time historical interpreter from 2013 to 2016 and was mentored by Mr. Hardister, applied for the position. Plaintiff Hill and Mr. Reed met the preferred qualifications and were scheduled for initial interviews.  Plaintiff Hill was denied a second interview, but Mr. Reed was scheduled for a second interview, and Mr. Reed and three other Caucasian staff members were selected for the vacant positions.   In April 2018, the Foundation failed to select Plaintiff Hill for a position of Assistant Supervisor and selected a Caucasian male in his thirties, who did not possess the preferred educational requirements for the position.

70.     Defendant disciplined and/or suspended Plaintiff Hill in March 2017, July 2017, October 2017, February 2018, and September 2018.  On October 23, 2018, Ms. Hill was terminated in her 12th year of employment at the Foundation.  Further, Defendant denied Plaintiff Hill's requests to not be scheduled on Sundays, so she could attend religious services from November 2017 through September 2018, and purposely scheduled her to work on Sundays, while granting the requests of Caucasian employees to not be scheduled to work on Sundays.   In addition, Defendant forced Plaintiff Hill to work in unsafe conditions, which contributed to her experiencing a medical emergency, requiring her transport to the emergency room of a local hospital.

71.     Defendant's actions directly and proximately caused Plaintiff Hill to suffer and to continue to suffer loss of income and other financial benefits, emotional distress, pain, suffering, stress, humiliation, loss of enjoyment of life, and damage to her reputation and career, and further loss of future professional opportunities.

72.     Defendant engaged in its discriminatory actions described above with malice or with reckless indifference to Plaintiff Hill's legal rights.

26

## COUNT II

**Violation of Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. Sec. 2000e et seq.
Retaliation**

73.     Plaintiff Hill incorporates by reference the foregoing paragraphs as if fully stated herein.

74.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's color, religion, sex, age, national origin, or to limit, segregate, or classify his employees or applicants for employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, age, or national origin.

75.     At all pertinent times, Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a).

76.     At all pertinent times, Plaintiff Hill was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a).

77.     Defendant, through its agents, subjected Plaintiff Hill to retaliation after she engaged in protected activity.  After Plaintiff filed EEO claims with the Commonwealth of Virginia in November 2017 and the EEOC in April 2018, Defendant took actions to dissuade Plaintiff Hill from pursuing her EEO claims. Plaintiff Hill was not selected for full-time positions in March 2018 and April 2018, and Caucasian employees with less experience, less education and/or who did not meet the preferred qualifications for the positions were selected. Defendant

27

disciplined and/or suspended Plaintiff Hill in October 2017, February 2018, and September 2018. Further, Defendant denied Plaintiff Hill's requests to not be scheduled on Sundays, so she could attend religious services from November 2017 through September 2018, and purposely scheduled her to work on Sundays, while granting the requests of Caucasian employees to not be scheduled to work on Sundays.  In addition, Defendant forced Plaintiff Hill to work in unsafe conditions, which contributed to her experiencing a medical emergency, requiring her transport to the emergency room of a hospital.  Finally, on October 23, 2018, Ms. Hill was terminated in her 12th year of employment at the Foundation.

78.     Defendant's actions directly and proximately caused Plaintiff Hill to suffer and to continue to suffer loss of income and other financial benefits, emotional distress, pain, suffering, stress, humiliation, loss of enjoyment of life, and damage to her reputation and career, and further loss of future professional opportunities.

79.     Defendant engaged in its discriminatory actions described above with malice or with reckless indifference to Plaintiff Hill's legal rights.

## COUNT III

**Violation of Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e *et seq.***
**Hostile Work Environment Based on Race, Religion, and Retaliation**

80.     Plaintiff Hill incorporates by reference the foregoing paragraphs as if fully stated herein.

81.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's color, religion, sex, age, national origin, or to limit, segregate, or classify his employees or applicants for employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, age, or national origin.

82. At all pertinent times, Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a).

83. At all pertinent times, Plaintiff Hill was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a).

84. Defendant, through its agents, subjected Plaintiff Hill to a hostile work environment based on her race by failing to select her for vacant positions, subjecting her to discriminatory discipline, denying her training offered to her coworkers, denying her work hours and Sundays offer for religious services, and forcing her to work in unsafe conditions, as detailed above. Specifically, Plaintiff Hill was not selected for full-time historical interpreter positions in August 2015, April 2016, April 2017, March 2018, and April 2018, and Caucasian employees with less experience, less education and/or who did not meet the preferred qualifications for the positions were selected. Defendant disciplined and/or suspended Plaintiff Hill in March 2017, July 2017, October 2017, February 2018, and September 2018. Further, Defendant denied Plaintiff Hill's requests to not be scheduled on Sundays, so she could attend religious services from November 2017 through September 2018, and purposely scheduled her to work on Sundays, while granting the requests of Caucasian employees to not be scheduled to work on Sundays. In addition, Defendant forced Plaintiff Hill to work in unsafe conditions which contributed to her experiencing

a medical emergency requiring her transport to the emergency room of a hospital.    Finally, on

October 23, 2018, Ms. Hill was terminated in her 12th year of employment at the Foundation.

85.    Defendant's actions directly and proximately caused Plaintiff Hill to suffer and to

continue to suffer loss of income and other financial benefits, emotional distress, pain, suffering,

stress, humiliation, loss of enjoyment of life, and damage to her reputation and career, and further

loss of future professional opportunities.

86.    Defendant engaged in its discriminatory actions described above with malice or

with reckless indifference to Plaintiff Hill's legal rights.


## COUNT IV

**Violation of Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. Sec. 2000e *et seq.***
**Discrimination based on Religion**
**Failure to Accommodate and Disparate Treatment**

87.    Plaintiff Hill incorporates by reference the foregoing paragraphs as if fully stated

herein.

88.    Title VII of the Civil Rights Act of 1964 states it is an unlawful employment

practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, term, conditions, or

privileges of employment, because of such individual's color, religion, sex, age, national origin, or

to limit, segregate, or classify his employees or applicants for employment opportunities, or

otherwise adversely affect his status as an employee, because of the individual's race, color,

religion, sex, age, or national origin.

89.    At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a).

90.    At all pertinent times, Plaintiff Hill was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a).

91.    Defendant, through its agents, discriminated against  Plaintiff Hill on the basis of religion by denying her requests for Sundays off from work so she could attend religious services, while granting the requests of Caucasian employees for Sundays off to attend religious services, and failing to accommodate her requests for Sundays off for religious purposes.  Specifically, between November 2017 and September 2018, Plaintiff Hill and a Caucasian female co-worker requested Sundays off to attend religious services.  Defendant granted the requests of the Caucasian female employee each month and did not schedule her to work on Sundays, while denying Plaintiff Hill's requests not to be scheduled to work on Sunday.  Defendant disciplined Plaintiff Hill in September 2018 when she switched schedules with a Caucasian co-worker, so she did not have to work on a Sunday that she had requested off.

92.    Defendant's actions directly and proximately caused Plaintiff Hill to suffer and to continue to suffer loss of income and other financial benefits, emotional distress, pain, suffering, stress, humiliation, loss of enjoyment of life, and damage to her reputation and career, and further loss of future professional opportunities.

93.    Defendant engaged in its discriminatory actions described above with malice or with reckless indifference to Plaintiff Hill's legal rights.

31

## COUNT V

**Violation of the Age Discrimination in Employment Act (ADEA)
29 U.S.C. § 623 *et seq.***

94.     Plaintiff Hill incorporates by reference the foregoing paragraphs as if fully stated herein.

95.     The ADEA prohibits discrimination on the basis of age with respect to an employee's compensation, terms, conditions, or privileges of employment.  29 U.S.C. § 623(a)(1), 631(a).

96.     At all pertinent times, Defendant was an employer within the meaning of the ADEA.

97.     At all pertinent times, Plaintiff Hill was an employee entitled to protection under the ADEA.

98.     In violation of the ADEA, Defendant, through its agents, discriminated against Plaintiff Hill based on her age by failing to hire her for full-time positions beginning in 2015 and continuing through 2018.   In April 2017, the Foundation announced a full-time historical interpreter position in the Indian Village site and Plaintiff Hill applied for the position and the Foundation selected Ms. Klimenko, a Caucasian female in her mid-20s who had not worked as a historical interpreter in the Powhatan Indian Village. In January 2018, Plaintiff Hill applied for a full-time media relations specialist position and was denied for an interview for the position, and in February 2018, Plaintiff Hill applied for a part-time assistant curator position and was denied an interview for the position.  The Foundation selected a Caucasian female substantially younger than Ms. Hill for the media relations specialist position.  In March 2018, the Foundation advertised full-time historical interpreter positions, and Plaintiff Hill and Russell Reed, a Caucasian male in

his 20s who previously volunteered at the Foundation and worked as a seasonal part-time historical interpreter from 2013 to 2016 and was mentored by Mr. Hardister, applied for the position. Plaintiff Hill and Mr. Reed met the preferred qualifications and were scheduled for initial interviews. Plaintiff Hill was denied a second interview, but Mr. Reed was scheduled for a second interview, and Mr. Reed and three other staff members were selected for the vacant positions.

99.     Defendant's actions directly and proximately caused Plaintiff Hill to suffer and to continue to suffer loss of income and other financial benefits, emotional distress, pain, suffering, stress, humiliation, loss of enjoyment of life, and damage to her reputation and career, and further loss of future professional opportunities.

100.    Defendant engaged in its discriminatory actions described above with malice or with reckless indifference to Plaintiff Hill's legal rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hill prays that this Court:

a.     Issue a declaratory judgment that Defendant violated Plaintiff's rights under

b.     Title VII of the Civil Rights Act of 1964, and the ADEA, 29 U.S.C. §§ 623 *et seq*. and declaring Plaintiff eligible to receive equitable and other relief;

c.     Enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law, including but not limited an amount no less than twelve million dollars ($12,000,000);

d.     Order Defendant to pay compensatory and damages in amounts to be determined at trial;

e.     Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs; and

f.     Order any other relief this Court deems appropriate.

Respectfully submitted,


_____/s/_____

Christopher R. Shiplett
Virginia Bar No. 74210
RANDOLPH LAW, PLLC
252 N Washington St
Falls Church, VA 22046
(p) 703-652-3039
(f) 703-852-3976
(e) chris.shiplett@randolphlaw.com


_____/s/_____

David A. Branch
*Pro Hac Vice Motion Pending*
Law Offices of David A. Branch &
Associates, PLLC
1828 L Street, NW, Suite 820
Washington, DC  20036
(p) 202-785-2805
(f) 202-785-0289
(e) davidbranch@dbranchlaw.com


## JURY DEMAND

Plaintiff demands a jury trial on all counts.