UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

LAURA HILL,

        Plaintiff,

v.                                      Civil No. 4:18cv137

JAMESTOWN-YORKTOWN FOUNDATION,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on a Partial Motion to Dismiss by defendant Jamestown-Yorktown Foundation ("Defendant" or "Foundation"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def.'s Mot., ECF No. 7. After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented, and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J). Thus, the Court **DENIES** Defendant's Request for a hearing.

For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**, and plaintiff Laura Hill ("Plaintiff") is **PROVIDED** leave to amend her complaint.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual Background[1]

Defendant is a state agency tasked with operating two living history museums that focus on the early history and settlements in Jamestown and Yorktown, Virginia. Am. Compl., Prelim. Statement. Plaintiff began working for Defendant in March of 2007 as a museum program assistant in the On-Site Education Department. Id. ¶ 6. In October of 2011, Plaintiff started working as a part-time historical interpreter in the Interpretive Services Department. Id. Plaintiff was terminated from this position in December 2011 after requesting time off. Id. ¶ 7.

In April 2012, after meeting with her managers, Plaintiff was rehired as a historical interpreter and was assigned to the Powhatan Village interpretive site, where she was the only African American employee. Id. ¶¶ 8-9. On July 27, 2012, Plaintiff complained to managers that her supervisor was under-scheduling her and failing to train her. Id. at 10. Beginning in 2013, Plaintiff reported to her interpretive site and human resource managers that she was being subjected to racial discrimination,

---

[1] The facts recited here come from the Amended Complaint and are assumed true only to decide the motion to dismiss. The facts stated here are not factual findings for any purpose other than consideration of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

disparate treatment, and a hostile work environment created by her supervisor. Id. at 10.

On September 9, 2013, Plaintiff filed a racial discrimination and retaliation complaint with the EEOC after someone vandalized her employee mailbox (charge No. 437-2013-01205). Id. She later amended that complaint in 2014 and 2015 to include harassment and vandalism of her employee locker. Id. On January 1, 2015, Plaintiff was reassigned to another interpretive site with a new supervisor. Id.

During her time working for Defendant, Plaintiff applied for numerous positions but was either denied interviews or not selected for the position, whereas younger, less qualified people of different races than her were chosen. Id. at 11-21. Plaintiff also endured discipline and harassment that other employees of different ages and races did not endure, including the following: citations and suspensions for not showing up to work when she was there or had a legitimate reason not to be, id. ¶¶ 21, 24-25, 30-31, 42; disruptions to her training responsibilities, id. ¶¶ 22, 29, 32, 37, 39-41, 43, 49-50; and numerous other citations, reprimands, suspensions, and interferences, id. ¶¶ 21-57. During this time period, Plaintiff filed complaints of these employment acts with the Virginia Employment Commission, the federal Equal Employment Opportunity Commission ("EEOC"), and the Virginia

3

Occupational Safety and Health Administration. <u>Id.</u> ¶ 38, 44, 46, 53, 71, 83.

On September 21, 2018, Plaintiff was reassigned from her position as a part-time historical interpreter to a position as a non-costumed interpretive tour guide, which required a reduced skill set and resulted in Plaintiff working fewer hours. <u>Id.</u> ¶ 58. Plaintiff requested greater responsibilities and more hours and sought to discuss her concerns about the reassignment, but she never received any replies from her managers. <u>Id.</u> ¶¶ 59-60. On October 23, 2018, Plaintiff's managers called Plaintiff into a meeting and terminated her employment, purportedly because she improperly started a tour early on October 14, 2018. <u>Id.</u> ¶ 62.

## B. Procedural Background

Plaintiff filed her Complaint against Defendant on October 26, 2018, alleging five counts of employment discrimination: Count 1 – Discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); Count 2 – Retaliation in violation of Title VII for having filed Virginia and Federal "EEO claims;" Count 3 – Hostile work environment based on race, religion, and retaliation; Count 4 – Discrimination based on religion; and Count 5 – Discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). Compl., ECF No. 1. Plaintiff filed an Amended Complaint on December 6, 2018, alleging

the same statutory violations but adding more factual detail. Am. Compl., ECF No. 4.

On February 5, 2019, after receiving an extension of time to file an answer, Defendant filed the instant partial motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Mot., ECF No. 7; Def.'s Memo, ECF No. 8, along with an answer to the Amended Complaint, Answer, ECF No. 9. On February 13, 2018, Defendant filed a request for a hearing. Def.'s Req., ECF No. 10. Plaintiff filed her response in opposition to the motion to dismiss on February 19, 2019, which was refiled on February 20, 2019 to correct a minor procedural filing error. Pl.'s First Resp., ECF No. 11; Pl.'s Second Resp., ECF No. 12. Defendant replied on February 25, 2019. Def.'s Reply, ECF No. 25. Having been fully briefed, these matters are now ripe for review.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

The Rule 12(b)(6) standard of review permits dismissal when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Though a complaint need not be detailed, the "[f]actual allegations must be enough to raise a right to

relief above the speculative level." Id. at 555; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, and a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Although the truth of the facts alleged is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).[2]

---

[2] A motion to dismiss under Rule 12(b)(6) is generally limited to a review of the allegations in the complaint itself. Goines v. Valley Cmty. Servs. Bd.,

## B. Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, may attack a complaint on its face, insofar as the complaint fails to allege facts upon which the court can base jurisdiction, or it may attack the truth of any underlying jurisdictional allegations contained in the complaint. <u>Beck v. McDonald</u>, 848 F.3d 262, 270

---

822 F.3d 159, 165-66 (4th Cir. 2016). However, courts may consider documents that are explicitly incorporated into the complaint by reference, <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007), and those attached to the complaint as exhibits, Fed. R. Civ. P. 10(c). Courts may also consider a document that was not expressly incorporated or attached to the complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity. <u>Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004); <u>Phillips v. LCI Int'l, Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999). A document is "'integral to the complaint'" "'where the complaint relies heavily upon its terms and effect[.]'" <u>Goines</u>, 822 F.3d at 159 (quoting <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002)).

Here, Defendant attaches two exhibits to its motion to dismiss: Exhibit A, the EEOC Dismissal and Notice of Rights relating to Plaintiff's 2013-2016 EEOC charges, and Exhibit B, Plaintiff's EEOC charges from 2018. Def.'s Ex. A, ECF No. 8-1; Def.'s Ex. B, ECF No. 8-2. Plaintiff references the EEOC charges in her complaint and attaches two of the EEOC charges as exhibits to her response in opposition to the instant motion. Pl.'s Ex. 1, ECF No. 12-1; Pl.'s Ex. 2, ECF No. 12-2.

First, although they were not attached to the Amended Complaint, the Court finds it appropriate to consider the EEOC charges attached to the parties' briefing because the charges were incorporated by reference in the Amended Complaint, Am. Compl. ¶ 71, and are "integral to the administrative history of a subsequent civil discrimination complaint." <u>Briggs v. T&D Plumbing & Heating Co.</u>, No. WDQ-10-2714, 2011 U.S. Dist. LEXIS 94693, at *12 n.17 (D. Md. Aug. 23, 2011) (citing <u>Cepada v. Bd. of Educ.</u>, 814 F. Supp. 2d 500, 507 n.7 (D. Md. Apr. 28, 2011)). Second, the Court also finds it appropriate to consider Defendant's Exhibit A, which is a Dismissal and Notice of Rights from the EEOC, also known as a "Right to Sue Letter." This document, which Plaintiff does not contest is authentic, triggers the time limit for Plaintiff to file a lawsuit. Pl.'s Ex. A. Thus, like the EEOC charges, Exhibit A is "integral to the administrative history of a subsequent civil discrimination complaint." See <u>Briggs</u>, 2011 U.S. Dist. LEXIS 94693, at *12 n.17. "[I]t is proper for this court to consider [Plaintiff's] relevant filings with the EEOC . . ., none of which were attached to the complaint, because [she] rel[ies] on these documents to satisfy the . . . time limit requirements." <u>Holowecki v. Fed. Express Corp.</u>, 440 F.3d 558, 565 (2d Cir. 2006). Moreover, though Plaintiff's Amended Complaint does not specifically reference the Right to Sue Letter provided as Defendant's Exhibit A, Plaintiff's Amended Complaint does reference the fact that Plaintiff "received Right to Sue letters on her claims." Am. Compl. ¶ 71.

(4th Cir. 2017); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In the former situation, known as a facial challenge, the court is required to accept all of the complaint's factual allegations as true, "and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." Adams, 697 F.2d at 1219.

In the latter situation, involving a challenge to the truth of the jurisdictional allegations, also known as a factual challenge, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings." Velasco v. Gov't of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004) (citing Adams, 697 F.2d at 1219). In explaining how district courts should evaluate evidence presented in a factual challenge, the United States Court of Appeals for the Fourth Circuit has indicated that it depends on whether the jurisdictional facts are intertwined with the merits facts. Kerns v. United States, 585 F.3d 187, 196 (4th Cir. 2009). When jurisdictional facts are not intertwined with the merits, the trial court may weigh evidence and resolve factual disputes to determine its jurisdiction. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); Adams, 697 F.2d at 1219. In such a case, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence and may present "affidavit[s], depositions or live testimony" to meet its burden. Adams, 697 F.2d at 1219; accord United States ex

rel. Vuyyuru v. Jadhav, 555 F.3d 337, 437-48 (4th Cir. 2009). When jurisdictional and merits facts are intertwined, "[i]t is the better view that . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits." Adams, 697 F.2d at 1219; accord Kerns, 585 F.3d at 193, 196.

## III. DISCUSSION

### A. Preliminary Statement

Defendant argues that the three-page preliminary statement of the case in Plaintiff's Amended Complaint must be dismissed or struck for failure to comply with Federal Rule of Civil Procedure 10(b). According to Rule 10(b):

A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). As recognized by another judge of this Court discussing Rule 10(b), rather than "lump[ing] together" several claims for relief, the "preferred practice of pleading is to state various claims for relief in separate counts" because "[o]therwise, the onus . . . is on the court to decipher which facts support which claims, as well as to determine whether plaintiffs are entitled to the relief sought." Haynes v. Anderson & Strudwick, Inc., 508 F. Supp. 1303, 1307 n.1 (E.D. Va. 1981); see also Shonk v. Fountain Power Boats, 338 F. App'x 282, 287 (4th

9

Cir. 2009) (affirming the district court's 12(b)(6) dismissal of certain counts of a complaint and noting that, given the facts, "each claim . . . should have been stated in a separate count"). Where a Defendant fails to comply with Rule 10(b), the typical remedy is to allow the party to amend the complaint. 5A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1322 (4th ed.) ("Even when a failure to comply with Rule 10(b) is shown, leave to amend ought to be made available to the offending pleader since the defect does not go to the merits of the action."). Moreover, a court is required to "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), though "a district court may deny leave to amend if the amendment 'would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 461 (4th Cir. 2013) (quoting Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)).

Here, Plaintiff's preliminary statement violates Rule 10(b) because it is not presented in numbered paragraphs. See Davis v. Ala. Dep't of Human Res., No. 2:16cv120, 2017 U.S. Dist. LEXIS 33518, at *12-13 (N.D. Ind. Mar. 9, 2017); Shaw v. Russell Trucking Line, Inc., 542 F. Supp. 776, 781 (W.D. Pa. 1983). Thus, the Court **GRANTS** Defendant's Motion to Dismiss the portion of the complaint containing the preliminary statement. Because this defect does

not go to the merits and leave to amend must be freely given, the Court **PROVIDES** Plaintiff **fifteen (15) days** to amend her Amended Complaint to comply with Rule 10(b).

## B. Eleventh Amendment

Defendant argues that, pursuant to the Eleventh Amendment to the United States Constitution, it is entitled to immunity from Plaintiff's ADEA claims because it is an agency of the Commonwealth.[3] This motion has been properly brought under Federal Rule of Civil Procedure 12(b)(1) because, although Eleventh Amendment immunity is not a "true limit" on jurisdiction, "[i]n effect, the Eleventh Amendment limits the ability of a federal district court to exercise its subject-matter jurisdiction over an action brought against a state or one of its entities." Roach v. W. Va. Reg'l Jail & Corr. Facility Auth., 74 F.3d 46, 48 (4th Cir. 1996). Although a plaintiff bears the burden of proving jurisdiction exists by a preponderance of the evidence, see Adams, 697 F.2d at 1219, because a defendant can waive sovereign immunity and because sovereign immunity is raised more like an affirmative defense, the Fourth Circuit has held that the defendant asserting

---

[3] The Court notes that Defendant is only claiming immunity from suit for claims arising under the ADEA. Although some federal statutes abrogate, or repeal, Eleventh Amendment immunity, "the Supreme Court ha[s] specifically rejected Congress' attempts to abrogate Eleventh Amendment immunity with respect to . . . the ADEA." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 496 (4th Cir. 2005) (citing Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000)).

immunity bears the burden of demonstrating that immunity exists. Hutto v. S.C. Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2015).

## 1. Standard

The Eleventh Amendment to the United States Constitution provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the Eleventh Amendment, by its terms, applies only to suits brought against a state by 'Citizens of another State,' it is well established that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" Lytle v. Griffith, 240 F.3d 404, 408 (4th Cir. 2001) (quoting Edelman v. Jordan, 415 U.S. 651, 663 (1974)); accord Pense v. Md. Dep't of Pub. Safety & Corr. Servs., No. 18-1554, 2019 U.S. App. LEXIS 17369, at *5 (4th Cir. June 11, 2019) ("By 'draw[ing] upon principles of sovereign immunity,' the Supreme Court has 'construe[d] the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another State,'" (quoting Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990)) (alterations in original). This "immunity also extends to 'state agents and state instrumentalities,'" Lee-Thomas v. Prince George's Cnty. Pub.

Sch., 666 F.3d 244, 248 (4th Cir. 2012) (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)). However, it does not extend to municipal corporations, counties, or similar political subdivisions. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Drewrey v. Portsmouth City Sch. Bd., 264 F. Supp. 3d 724, 727 (E.D. Va. 2017).

To determine whether a state entity is entitled to immunity as an "arm[] of the state," the Fourth Circuit has articulated four factors that courts should consider: (1) "whether a judgment against the governmental entity would have to be paid from the State's treasury;"[4] (2) "the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys;" (3) "the scope of the entity's concerns—whether local or statewide—with which the entity is involved;" and (4) "the manner in which State law treats the entity." Cash v. Granville Cty. Bd. of Educ., 242 F.3d 219, 222-24 (4th Cir. 2001).

## 2. Analysis

As a preliminary matter, the Court addresses whether Defendant is pursuing a facial or factual jurisdictional challenge

---

[4] Although the Fourth Circuit once held that this factor is the "most salient," Cash v. Granville Cty. Bd. of Educ., 242 F.3d 219, 224 (4th Cir. 2001), the Fourth Circuit recently noted that "more recent Supreme Court precedent suggests that the first factor does not deserve such preeminence." United States ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp., 681 F.3d 575, 580 n.3 (4th Cir. 2012) (citing Fed. Maritime Comm'n v. S.C. Ports Auth., 535 U.S. 743, 765 (2002)).

and, if factual, whether the jurisdictional and merits facts are intertwined. Here, Defendant is making a factual challenge because it is challenging the accuracy of jurisdictional allegations not the adequacy of the allegations on the face of the Amended Complaint. Moreover, the facts are not intertwined here because the jurisdictional issue of whether Defendant is an "arm of the state" is wholly distinct from the merits issue of whether Defendant violated the ADEA.[5] Because the facts are not intertwined, the Court may weigh evidence presented beyond the pleadings and resolve factual disputes pertaining to Eleventh Amendment immunity. Kerns, 585 F.3d at 196; Velasco, 370 F.3d at 398.

### a. State Treasury

First, the Court addresses whether a judgment in this case will be paid out of the Commonwealth's treasury. The Commonwealth does provide substantial funding to Defendant. Defendant provided the Court with evidence showing that, in 2019, the Defendant received $18,918,251 of the Commonwealth's annual budget as decided by the General Assembly of Virginia. Def.'s Budget Ex.,

---

[5] Immunity turns on the factors explained above: (1) whether the judgment will be paid by the state treasury, (2) the degree of control exercised by the state, (3) whether the entity is concerned with state or local matters, and (4) the way state law treats the entity. Cash, 242 F.3d at 224. The merits of Plaintiff's ADEA claim turn on the resolution of completely different facts: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) more favorable treatment of someone outside the protected class with comparable qualifications. Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998)

ECF No.13-1. Defendant represents to the Court that this comprises "more than half of the Foundation's annual operating budget," which it suggests indicates that a judgment against Defendant would have at least a tangential impact on the treasury. Def.'s Reply 6. Moreover, Defendant argues that it "expects to be covered by the Commonwealth of Virginia Public Liability Risk Management Plan. Id. Virginia Code § 2.2-1837 states that:

> A. Subject to the approval of the Governor, the Division [of Risk Management in the Department of the Treasury] shall establish a risk management plan . . . to provide:
>
> 1. Protection against liability imposed by law for damages resulting from any claim:
>
> a. Made against any state department, agency, institution, board, commission, officer, agent, or employee for acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization; . . . .

If Defendant is covered, and a judgement against Defendant would be satisfied by such a plan, such fact would militate in favor of a finding of immunity, as recognized by at least one other court. See Harbison v. Va. ex rel. Cuccinelli, No. 3:10cv297, 2010 U.S. Dist. LEXIS 94548, at *13 (E.D. Va. Aug. 11, 2010), report and recommendation adopted by 2010 U.S. Dist. LEXIS 94556 (E.D. Va. Sep. 10, 2010) (considering application of the plan to be a sufficient payment from the state treasury). Additionally, there does not appear to be any statute expressly providing that Defendant, rather than the Commonwealth, would have to pay

judgments entered against it. Cf. Drewrey, 264 F. Supp. 3d at 728 ("By statute, judgments against Virginia school boards are not paid from the Commonwealth's treasury.")

That said, Defendant has not provided any proof that the Commonwealth's funds actually comprise over half of Defendant's budget. Additionally, even if they do, just "because state funds may be lumped into a pool from which a [state entity] pays a particular judgement," does not mean that the state is paying for the judgment. Drewrey v. Portsmouth City Sch. Bd., No. 2:17cv20, 2017 U.S. Dist. LEXIS 144507, at *11 (E.D. Va. July 10, 2017), report and recommendation adopted by Drewrey, 264 F. Supp. 3d at 728. Such a connection between the budget and the payment is "too attenuated and indirect to be considered payment from the State's treasury." Id. Moreover, Defendant only speculates that a judgment would be covered by the risk management plan and does not provide the Court with evidence of such coverage, but rather states that it will provide the plan to Plaintiff in discovery. Further, as Plaintiff indicates, there is no statute expressly providing that the Commonwealth will pay the judgment.

Therefore, there are considerations weighing both ways and the record before the Court is inconclusive on the matter of whether the Commonwealth's treasury would pay the judgment. Though proof of the liability risk management plan would shift the weight in favor of finding immunity, Defendant only speculates as to its

applicability.  Accordingly, Defendant has not met its burden to show this factor favors immunity and the Court looks to the other factors to determine whether Defendant is an arm of the Commonwealth for purposes of immunity.

### b. Degree of Control

Second, the Court assesses the degree to which Defendant is controlled by the Commonwealth.  "Under the degree-of-state-control factor, we consider 'who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions,' as well as 'whether an entity has the ability to contract, sue and be sued, and purchase and sell property, and whether it is represented in legal matters by the state attorney general.'" Hutto, 773 F.3d at 546 (citing Oberg v. Pa Higher Educ. Assistance Agency, 745 F.3d 131, 137 (4th Cir. 2014).

Here, the Governor and Virginia General Assembly have substantial control over the board of trustees that administers the Foundation.  The board is comprised of twenty-nine members – twelve of which are appointed by the Governor of the Commonwealth and approved by the General Assembly, eight of which are members of the House of Delegates, and four of which are members of the Senate.  Va. Code § 23.1-3206.  The other five members are chosen by the board of trustees.  Id.  A board "composed of gubernatorial appointees and state legislators or officials . . . . frequently

indicates state control." Oberg, 745 F.3d at 139. In contrast, for example, school boards that hold local elections for board members have been deemed municipalities for immunity purposes in part because their membership is determined locally. See Drewrey, 264 F. Supp. 3d at 729.

Additionally, as already stated, the Commonwealth (as opposed to local governments or private sources) provides substantial funding to Defendant. Def.'s Budget Ex., ECF No.13-1. Furthermore, the Commonwealth controls Defendant's ability to acquire "lands, property, and structures" by requiring the consent of the Governor and requiring that the title to land and property be in the name of the Commonwealth. Va. Code § 23.1-3207. Consent of the Governor is also required to convey land by lease, to transfer any real property, and to enter into certain contracts. Id. Certain contracts also require approval of the Commonwealth's Secretary of Education. Id. The lack of autonomy in these powers suggests Defendant is controlled by the Commonwealth. Cf. Oberg, 745 F.3d at 139 (finding that "the power to enter into contracts, sue and be sued, and purchase and sell property in [the entity's] own name, all . . . suggest operational autonomy").

In addition, Defendant must "adopt names, flags, seals, and other emblems for use in connection with such shrines and copyright the same in the name of the Commonwealth." Va. Code § 23.1-3207. (emphasis added). Unlike Virginia and North Carolina school

boards, which, for example, by statute may be represented by independent attorneys, Defendant is represented by the Attorney General of Virginia, suggesting further control by the Commonwealth. See Cash, 242 F.3d at 225 (citing N.C. Gen Stat. § 114-2.3) (finding the fact that a school board was represented by private counsel weighed against finding control by the state of North Carolina); Drewrey, 264 F. Supp. 3d at 728 (citing Va. Code 22.1-82, 22.1-83) (same in Virginia). Thus, the Court finds that the Commonwealth exercises substantial control over the Foundation such that this factor weighs in favor of immunity.

### c. Scope of Concerns

Third, the Court evaluates whether the scope of Defendant's concerns is local or statewide. In Cash, the Fourth Circuit explained that school boards and county sheriff's offices are examples of entities whose concerns are "primarily local" because their jurisdictions are limited to the counties that they were created to serve. Cash, 242 F.3d at 227. In other words, just because education and law enforcement are statewide concerns, that does not mean that the concern of the specific school board or law enforcement department is statewide. Id.

Here, Defendant clearly has some local concerns as its task is to operate museums located in the Jamestown and Yorktown area of Virginia. Unlike schools and sheriffs' departments, however, the museums serve more than just the local community. The museums

serve to educate people beyond the confines of the Jamestown and Yorktown areas as their museum is open to visitors from the entire Commonwealth of Virginia. Moreover, the purpose of the Foundation is to commemorate the growth of the Commonwealth and the "Commonwealth's role in shaping the fundamental principles of the American constitutional system." Va. Code § 23.1-3207 (emphasis added). This shows its interest is not just in the local area but in the Commonwealth as a whole. Another fact reflecting Defendant's service to the concerns of the entire Commonwealth rather than just the local area is that, effective October 1, 2016, through July 1, 2020, the Virginia General Assembly tasked Defendant with planning, coordinating, and implementing a 400th anniversary celebration of "landmark events in Virginia's history." Va. Code § 23.1-3209.1 (emphasis added). Other agencies and institutions of the Commonwealth are to assist Defendant upon request, and Defendant must receive prior written approval of the Governor before engaging in numerous key tasks associated with the celebration. Id. This is a decidedly state concern for Defendant. Thus, this factor weighs in favor of finding immunity.

### d. State Law

Fourth, and finally, the Court considers how state law treats the governmental entity – as a local or a state entity. "This factor requires courts to consider 'the relevant statutes, regulations, and constitutional provisions which characterize the

entity, and the holdings of state courts on the question.'" Hutto, 773 F.3d at 548 (quoting Harter v. Vernon, 101 F.3d 334, 342 (4th Cir. 1996).

Plaintiff concedes that Defendant is an agency of the Commonwealth for which the Commonwealth's Secretary of Education is responsible. See Am. Compl., Prelim. Statement; see also Va. Code § 2.2-208 (declaring that the Secretary of Education is responsible to the Governor for the Foundation). Defendant was created by the General Assembly and is treated as an educational institution of the Commonwealth, not a local educational institution. Va. Code § 23.1-3206. The Foundation was formed under the same title that created state institutions of higher education, which are treated as state entities for immunity purposes. See Va. Code §§ 23.1-1300 to 23.1-2913; Md. Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255, 265 (4th Cir. 2005) ("Higher education is an area of quintessential state concern and a traditional state governmental function.") (emphasis added). In addition to these indicia that state law treats Defendant as a state entity, the statutory sections referenced above in the "degree of control" factor also indicate that the Foundation is considered an entity of the state. See Va. Code §§ 23.1-3206 to 23.1-3209.1.

Moreover, the employees of the foundation are state employees. Cf. Va. Code § 2.2-2905(15) (having to create an

exception from the Virginia Personnel Act for certain Foundation employees, indicating that the employees are state employees who would normally be covered by the Act and that some employees are state employees covered by the Act). Further, though there do not appear to be any regulations specifically discussing the Foundation's status as a state entity nor any cases declaring the Foundation a state entity for immunity purposes, such sources are useful, but not necessary, considerations that the Court is permitted to review in its evaluation of this factor. Here, the statutory sections cited provide sufficient support that state law treats Defendant as a state, not a local, entity. Thus, this factor weighs in favor of immunity.

### e. Conclusion

The Court finds that, although the record is inconclusive on the state treasury factor, the other factors weigh in favor of immunity. Therefore, Defendant is entitled to immunity, pursuant to the Eleventh Amendment and the principle of sovereign immunity, from suit for the alleged ADEA violations. Accordingly, Plaintiff's ADEA claim (Count V) is **DISMISSED without prejudice**.[6]

---

[6] "A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013); accord Fleming v. Va. State Univ., 671 F. App'x 117, 118 (4th Cir. 2016) (per curiam) (affirming a dismissal for lack of subject matter jurisdiction based on Eleventh Amendment immunity but modifying it to be without prejudice).

## C. Timely Filing of EEOC Charges

Next, Defendant argues that some of the acts alleged in Plaintiff's Amended Complaint are time barred because Plaintiff failed to allege them on time in the charges she filed with the EEOC. Defendant asserts that, because these allegations are time barred, they should be dismissed from the Amended Complaint.

### 1. Standard

A plaintiff is required to file a charge with the EEOC before filing suit under Title VII. 42 U.S.C. § 2000e-5(f)(1).[7] Such a charge must be filed with the EEOC within 180 days of any alleged unlawful employment practice, or 300 days in states where there is an agency with authority to grant or seek relief from any such practices. 42 U.S.C. § 2000e-5(e)(1). Virginia has its own enforcement agency; therefore, the charge must be filed within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. 2000e-5(e)(1); see also Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 440 (4th Cir. 1998).

The Supreme Court has previously found that "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and "each discrete discriminatory act starts a new clock for filing charges

---

[7] The ADEA has the same requirement and thus, the same analysis applies. 29 U.S.C. § 626(d)(1); see Morse v. Virginia Dept. of Corrections, No. 3:13cv361, 2014 U.S. Dist. LEXIS 44756, *18 (E.D. Va. Mar. 31, 2014). The Court does not address the ADEA in this section because it has already dismissed the ADEA claims under the Eleventh Amendment.

alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Certain adverse employment practices such as the failure to promote, termination, denial of transfer, or refusal to hire are such discrete acts. Id. at 110. "The Eastern District of Virginia has held on multiple occasions that the '300-day period begins to run "from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition."'" Spida v. BAE Sys. Info. Sols., No. 1:16-cv-979, 2016 U.S. Dist. LEXIS 173311, at *11 (E.D. Va. Dec. 13, 2016) (quoting Panyanouvong v. Vienna Wolftrap Hotel, 525 F. Supp. 2d 793, 796 (E.D. Va. 2007)).

Unlike an allegation of discrimination grounded in discrete acts, when a Title VII claim based on a hostile work environment is alleged, a court is not necessarily constrained in its analysis to only consider actions that occurred within 300 days of filing the EEOC Charge. The earlier incidents may still be timely under the "continuing violation" doctrine. According to the continuing violation doctrine, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purpose of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." AMTRAK v. Morgan, 536 U.S. 101, 105 (2002). The Supreme Court has held that the entire time period covered by a hostile work environment

24

claim is considered "one unlawful employment practice" for Title VII purposes. See id. at 118. Therefore, "[i]n order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." Id. at 118.

## 2. Analysis

Here, Plaintiff filed seven different EEOC charges in 2018: one on April 3, one on May 9, and five on October 23. Def.'s Ex. B. Defendant argues the following incidents listed in the Amended Complaint are discrete acts that are time barred because the acts were either not alleged in EEOC charges or the EEOC charges describing such incidents were filed more than 300 days after they occurred:

- Plaintiff's termination in 2011 (October 23 charge)
- Failure to hire in July 2015 (April 3 charge)
- Failure to hire in March 2016 (not in any charge)
- No-show incident on August 15, 2016 (October 23 charge)[8]
- Reprimand on March 29, 2017 for an editorial Plaintiff wrote (October 23 charge)
- No-show incident on March 29, 2017 (October 23 charge)
- Failure to hire in April 2017 (April 3 charge)
- Citation for damage to state property in July 2017 (October 23 charge)

---

[8] A "no-show incident" is where Plaintiff was reprimanded for failure to "show up" at work.

- Citation for excessive absenteeism on July 28, 2017 (October 23 charge)
- Citation for an unauthorized entry into the historical clothing store on July 31, 2017 (October 23 charge)
- No-show incident on or about August 27, 2017 (not in any charge)[9]
- Combative meeting on August 31, 2017 (not in any charge)[10]

Plaintiff argues that, although these are discrete acts, they were timely filed because they may be considered as a part of her hostile work environment claim. Defendant's reply clarifies that it is not arguing for dismissal of Plaintiff's hostile work environment claim (Count III) but, rather, is arguing that the other claims of discrimination based on these discrete acts should be dismissed. The Court agrees that, to the extent these discrete acts are alleged as a part of a hostile work environment, such a claim should not be dismissed for being time barred because "behavior alleged outside the statutory time period, is permissible for the purpose of assessing liability, so long as any

---

[9] Defendant claims that this is not alleged in any charge. However, the incident Defendant is referring to is actually a part of the no-show that occurred on August 16, 2017. On or about August 28 is the day Plaintiff met with her supervisors about the no-show incident. This act was alleged in her April 3, 2018 EEOC charge. Def.'s Ex. B.

[10] Defendant also incorrectly states that this "combative meeting" was not alleged in any of Plaintiff's charges. Plaintiff requested the meeting on August 31, 2017. This date is not reflected in the charges. However, the meeting actually took place on September 6, 2017, and was alleged in Plaintiff's April 3, 2018 charge. Def.'s Ex. B.

act contributing to that hostile environment takes place within the statutory time period." Morgan, 536 U.S. at 105.

However, to the extent her other claims are based on these alleged discrete acts, those claims may be dismissed if the act occurred more than 300 days from the date Plaintiff filed the EEOC charge. Accordingly, the Court considers each incident in relation to when Plaintiff filed the corresponding EEOC charge.

### a. August 2017 Acts

The Court begins by addressing two of the discrete acts that Defendant asserts were not alleged in plaintiff's EEOC charges: the no-show on or about August 27, 2017, and the combative meeting on August 31, 2017. As stated in footnotes 8 and 9 above, these acts were actually alleged in the April 3, 2018 charge, just using different dates in the sequence of events. Thus, they occurred within 300 days of the filing of the charge and are considered timely. Accordingly, Defendant's motion is **DENIED** insofar as it is based on claims for these two discrete acts.

### b. Undisputed Acts

Next the Court addresses the acts whose late filing Plaintiff does not dispute: Plaintiff's termination in 2011; failure to hire Plaintiff in July 2015; failure to hire Plaintiff in March 2016; reprimand for editorial on March 29, 2017; no-show on March 29, 2017; and Damage to state property in July 2017. The portions of Plaintiff's claims for discrimination based on these discrete acts

are **DISSSMISSED with prejudice** because they are clearly time barred since the charges in which they were mentioned (or could have been mentioned) were filed more than 300 days after the act occurred.[11] Thus, Defendant's motion is **GRANTED** to the extent it sought to dismiss such claims.

### c. Disputed Acts

Other claims require more discussion as Plaintiff specifically disputes their dismissal: (1) the failure to hire Plaintiff in April 2017, (2) the unauthorized entry on July 31, 2017, (3) the excessive absenteeism on July 28, 2017, (4) the August 15, 2016 no-show. Each is addressed in turn below.

### i. Failure to Hire April 2017

With regard to the failure to hire in April 2017, the date of such a discrete act is the date Plaintiff was "informed of the allegedly discriminatory employment decision." Spida, 2016 U.S. Dist. LEXIS 173311, at *11. Plaintiff claims, in her brief, that she was notified of the non-selection in June 2017; this corresponds with the allegation in her Amended Complaint that she met with supervisors to discuss her non-selection in June 2017. Am. Compl. ¶ 13. However, Defendant asserts that Plaintiff was notified of the non-selection on May 22, 2017, which is consistent with the allegation in her EEOC charge. Def.'s Ex. B.

---

[11] Although the March 2016 failure to hire is not alleged in any charge, even if it had been alleged in the first possible charge (April 3, 2018) it would have been alleged too late.

Technically, the EEOC charge and the Complaint do not conflict because the EEOC charge provides the date she was "informed that [she] was not selected" whereas the Complaint only alleges the date she met with her supervisors to discuss the non-selection. Compare Def.'s Ex. B with Am. Compl. ¶ 13. These two events are not necessarily the same. It is possible that Plaintiff was notified of the non-selection prior to meeting with her supervisors. While the Court is required to accept allegations on the face of the complaint as true, the Court "need not accept as true unwarranted inferences." E. Shore Mkts., Inc., 213 F.3d at 180. Plaintiff's argument that the Amended Complaint alleges she was informed in June is an unwarranted inference because of the language in the EEOC charge that expressly states she was notified of the non-selection on May 22. In light of this clear, undisputed language in the charge, the Court need not accept Plaintiff's claim in her brief that she was notified in June 2017 as true. Thus, considering as true the allegations in the Amended Complaint and the allegations in the EEOC charge, Plaintiff's charge for the April 2017 non-selection was not timely filed. Accordingly, Defendant's motion is **GRANTED**, and any portion of any claim, other than a hostile work environment claim, based on the failure to hire her for the job she applied to in April 2017 is **DISMISSED with prejudice**.

### ii. Unauthorized Entry and Excessive Absenteeism

Next, the Court addresses unauthorized entry and excessive absenteeism together. Though Plaintiff does not dispute that such acts occurred over 300 days before they were expressly alleged in the October 23, 2018 charge, Plaintiff claims they were within the scope of her April 3, 2018 charge and, thus, should be construed as timely.[12] The scope of an employment discrimination lawsuit is determined by the scope of the EEOC charge filed prior to suit. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). If a plaintiff fails to allege certain acts in her charge, she may still advance such claims in a subsequent suit "so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation.'" Sydnor v. Fairfax Cty., 681 F.3d 591, 594 (4th Cir. 2012) (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). It follows that, if a claim is within the scope of an EEOC charge, it is considered filed on the date of that charge. Thus, that date becomes the operative date for timely filing.

To determine whether claims are reasonably related, courts in the Fourth Circuit look to whether the claims involve the same place of work, the same people, and the same type of

---

[12] The Court notes that Plaintiff's claims would also be timely if filed as a part of the May 9 charge.

discrimination. Sydnor, 681 F.3d at 594-95. For example, the Fourth Circuit has found that a plaintiff's claims for failure to provide an accommodation for a disability (working full duty with a wheelchair), though not precisely the same type of accommodation alleged in the EEOC charge (light duty work), were reasonably related. Id. In contrast, the Fourth Circuit has rejected the argument that a claim of sex discrimination is reasonably related to an EEOC charge alleging race discrimination. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002).

Here, Plaintiff's April 3, 2018 EEOC charge alleges discrimination in hiring, retaliation via discipline after October 16, 2017, and no-show incidents from March, July, and August 2017. The May 9 amendment alleges retaliation for filing the April charge and impediments to Plaintiff's growth at work by one of her supervisors from July 30 to October 30, 2017. The claims for unauthorized entry are not reasonably related to the allegations from the April 3 and May 9 charges because the people involved in the unauthorized entry are not identified as being the same as the people involved in the incidents alleged in the charges, and the discriminatory act is very different from the acts alleged in the April 3 and May 9 charges.

The citation for excessive absenteeism, on the other hand, is different because it is reasonably related to three no-show incidents alleged in Plaintiff's April 3, 2018 EEOC charge: (1)

31

the March 27, 2017 no-show, (2) the July 17, 2017 no-show, and (3) the August 16, 2017 no-show. Plaintiff alleges that she was discriminated against when she was falsely accused of not showing up for work on March 27 and July 17 and when her employer failed to follow proper protocol that requires supervisors to call employees that do not appear for their shifts when Plaintiff missed her shift on August 16. The citation for excessive absenteeism allegedly occurred on July 28, 2017, which is after the July 17, 2017 no-show incident but before the August 16, 2017 no-show incident. Such a citation would reasonably have been discovered in the investigation of whether the no-show incidents were discriminatory because an administrative investigation about Plaintiff being falsely accused of not showing up for work on the alleged dates would reasonably include the citation she received for having too many absences from work within the same time frame. Thus, the excessive absenteeism citation is reasonably related to the allegations of the no-show incidents in Plaintiff's April 3, 2018 charge and was, therefore, timely filed.

Accordingly, Defendant's motion is **GRANTED** with respect to the unauthorized entry but **DENIED** with respect to her excessive absenteeism citation. The portions of the claims based on the unauthorized entry, other than her hostile work environment claims, are **DISMISSED with prejudice** as time barred.

### iii. August 2016 No-Show

Finally, for the August 15, 2016 no-show incident, Plaintiff does not allege the exact date that she was notified of the citation for not showing up. However, the charge was not filed until more than two years later on October 23, 2018. For the charge to have been timely, Defendant would have had to notify Plaintiff approximately a year and a half after the fact – which is not a reasonable inference the Court can draw based on the way Plaintiff's Amended Complaint and her EEOC charge are written. The phrasing suggests that Plaintiff was notified on or near August 15, 2016. Thus, Defendant's motion is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED with prejudice** to the extent any claims other than hostile work environment are based on this August 15, 2016 no-show incident.

### D. Right to Sue

#### 1. Standard

After the EEOC has considered a plaintiff's charge and completed the administrative procedures, it issues a "right-to-sue letter." Title VII provides the plaintiff with "a ninety-day period in which to file their claims after the EEOC has given them a right-to-sue letter." Watts-Means v. Prince George's Family Crisis Center, 7 F.3d 40, 42 (4th Cir. 1993) (citing 42 U.S.C. § 2000e-5(f)(1).

The "timing requirements for filing a lawsuit following an EEOC right-to-sue notice have been strictly construed" in the Fourth Circuit. Lewis v. Norfolk Southern Corp., 271 F. Supp. 2d 807, 811 (E.D. Va. 2003) (citing Harvey v. City of New Bern Police Dep't, 813 F.2d 652 (4th Cir. 1987)). For example, in Harvey, the Fourth Circuit affirmed the dismissal of a complaint filed "ninety-one days after" the receipt of a right to sue letter. Harvey, 813 F.2d at 654. Similarly, in Boyce v. Fleet Finance Inc., 802 F. Supp. 1404, 1411 (E.D. Va. 1992), another judge of this Court dismissed a complaint filed ninety-two days after the right to sue letter was received.

The Fourth Circuit has expressly rejected a legal interpretation of "receipt" that necessarily requires "actual receipt," as such a rule may allow a plaintiff to unfairly manipulate the limitations period. See Watts-Means, 7 F.3d at 41-42 (finding that the limitations period did not begin to run when the plaintiff picked up her EEOC right to sue letter at the post office, but rather, it started five days earlier when a notice was left at the plaintiff's home stating that a certified letter was "available for pickup" at the post office); Harvey, 813 F.2d at 654 (concluding that the limitations period began the day the EEOC right-to-sue letter was received and signed for by the plaintiff's wife even though she did not alert the plaintiff to the letter until six days later); Nguyen v. Inova Alexandria Hosp., 187 F.3d

630, 1999 U.S. App. LEXIS 17978, at *9-10 (4th Cir. 1999) (unpublished table opinion) (holding that "the limitations period began to run when the Notice of Right to Sue was delivered to [the plaintiff's] home and picked up by a designated neighbor" even though the plaintiff was on vacation and did not actually receive such letter from her neighbor until more than a week after it was delivered).

When the date that an EEOC right to sue letter was delivered to a plaintiff's home is "disputed or unknown," courts within the Fourth Circuit apply a "presumption that notice was received three days after it was mailed." Panyanouvong, 525 F. Supp. 2d at 796-97 (citing Nguyen, 1999 U.S. App. LEXIS 17978, at*9-10); see Crabill v. Charlotte Mecklenburg Bd. Of Educ., 423 F. App'x 314, 321 (4th Cir. 2011) (stating that "the law presumes" receipt of an EEOC right to sue letter three days after its mailing) (citing Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 148 n.1 (1984)). Such presumption, of course, is subject to being rebutted by contrary evidence. Nguyen, 1999 U.S. App. LEXIS 17978, at *8-9; Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525-26 (2d Cir. 1996).

## 2. Analysis

Here, Plaintiff filed Charge No. 437-2013-01205 on September 9, 2013 ("September 2013 Charge"), alleging race discrimination and retaliation after her employee mailbox had been vandalized.

Am. Compl. ¶ 10. Plaintiff later amended that charge in 2014 and 2015 to include the fact that someone vandalized her locker and to allege harassment. Id. ¶ 10. The right-to-sue letter based on that charge states that it was mailed on January 4, 2016. Def.'s Ex. A. The Court has not been provided any information about the date it was received and, thus, finds it appropriate to apply the presumption that it was received three days after it was mailed. See Panyanouvong, 525 F. Supp. 2d at 796-97. As the letter was mailed on January 4, 2016, it is presumed to have been received on January 7, 2016. Accordingly, Plaintiff would have had to sue on her claims in the September 2013 charge and its amendments within ninety days after that – on or before April 6, 2016.

There is no indication Plaintiff filed a suit by that date and she clearly filed the instant suit much later than that date. Thus, any claims of discrimination based on the discrete acts in the September 2013 Charge and its amendments are not timely filed. Accordingly, to the extent Counts I, II, and IV are based on the discrete acts alleged in the September 2013 Charge, Defendant's motion is **GRANTED** and such claims are **DISMISSED with prejudice.**

However, Plaintiff's claim of hostile work environment is different. Plaintiff's allegations indicate that the September 2013 Charge and its amendments only alleged race discrimination, retaliation, and harassment. There is no indication that Plaintiff alleged a hostile work environment at that time. Moreover, it is

36

possible she did not even have the basis for a hostile work environment claim until more adverse acts happened to her in subsequent years. Normally, "[a]llowing a plaintiff to re-allege claims from an earlier EEOC charge in a subsequent EEOC charge would render the 90-day statute of limitations meaningless because a plaintiff could evade the deadline simply by seeking another right-to-sue letter." Harrach v. Berryhill, No. CV-17-04244-PHX-DLR, 2018 U.S. Dist. LEXIS 214394, at *10-11 (D. Ariz. Dec. 18, 2018). However, though Plaintiff's hostile work environment claim appears to be based on some of the same facts that appeared in the September 2013 Charge and its amendments, Plaintiff is not re-alleging the claims she alleged in that charge because she did not have a hostile work environment claim at that time. Thus, allowing Plaintiff to include the acts alleged in the September 2013 Charge and its amendments as a basis for her hostile work environment claim would not run afoul of the intent of the ninety-day filing rule because Plaintiff is not evading the time requirement by refiling a claim. Accordingly, Defendant's motion is **DENIED** to the extent it sought for the Court to dismiss Plaintiff's hostile work environment claim.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss for failure to state a claim is **GRANTED in part and DENIED in part**. Plaintiff is **PROVIDED** leave to file an amended complaint to comply

with Rule 10(b). Plaintiff must file a new amended complaint within fifteen (15) days of the date of this Opinion and Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ 

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 15, 2019