IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

LAURA HILL,

        Plaintiff,

v.

                                        C.A. No. 4:18-cv-00137-MSD-LRL

JAMESTOWN-YORKTOWN
FOUNDATION,

        Defendant.

## DECLARATION OF JAMIE L. HELMICK

I, Jamie L. Helmick, declare that the following facts are true to the best of my knowledge and belief:

1.     I am presently employed as the Volunteer Services Manager at the Jamestown-Yorktown Foundation ("JYF" or "Foundation"). I have been working in that role since January 1, 2019. Prior to my current position, I formerly served as an Interpretive Site Supervisor at JYF. As Volunteer Services Manager, my job duties include, but are not limited to, overseeing all aspects of the Foundation's volunteer and intern programs, including recruiting, interviewing, placing, training, and evaluating volunteers and interns within our various departments. I am a Native American female.

2.     I make this declaration based on personal knowledge and/or review of records kept in the regular and ordinary course of business.

3.     I became Laura Hill's supervisor when she began as a part-time historical interpreter at the Powhatan Indian Village ("PIV") site in 2012.

4.     During the time I supervised Ms. Hill, I either observed or was made aware of various issues and problems with her job performance (including, by way of illustration, her

attendance).  On several occasions, I discussed these issues and problems with Ms. Hill and then would provide her a written memorandum afterwards.   True and accurate copies of examples of such memoranda are attached to this declaration as Hill Dep, Ex. 11 (JYF 0002722), Hill Dep., Ex. 12 (JYF 0000114-116); Hill Dep., Ex. 14 (JYF 0002725); Hill Dep., Ex. 16 (JYF 0000052); Helmick Exhibit A (JYF 0000050) and Helmick Exhibit B (JYF 0000051).  As Ms. Hill's supervisor, my intent in counseling her about these issues and problems was to have her correct them so that her overall job performance would improve.

5.      My actions, beliefs and decisions regarding Ms. Hill, and her employment at the Foundation, were legitimate and work-related.  They were not based on Ms. Hill's race or retaliatory - nor were they based, in whole or in part, on any other unlawful motive.

6.      In the summer of 2014 I requested a training rotation to the James Fort during the fall season.  I rotated to the James Fort in September and October of 2014 and went back to the PIV in November and December of 2014.  I enjoyed my time at the James Fort during those two (2) months, so at the end of my rotation I requested a transfer.  Mr. Frank Hardister agreed to switch sites with me, so I moved to the James Fort, and Mr. Hardister moved to the PIV, in January of 2015.  When that occurred, I no longer supervised Ms. Hill at the PIV.

Pursuant to 28 U.S.C. § 1746, I, Jamie L. Helmick, declare under penalty of perjury that the foregoing is true and correct.  Executed this February 27, 2020.

_____
Jamie L. Helmick

2

# MEMORANDUM

**TO:**      Laura Hill

**FROM:**   Jamie Lavin

**DATE:**   May 31, 2012

**RE:**     <u>Follow-up to our meeting on 05/31/12</u>

Thank you for meeting with me today, 05/31/12, this memo serves as a follow-up for the issues we discussed today. You came in to meet with me regarding a few concerns you had about the number of hours you were assigned for the month of June. During our meeting I explained that hours are given out based on a wage employee's status, i.e., whether or not they are core, mid-level, or seasonal. As an employee that is home-based with On-Site Education, you are considered an 'extra', which is equivalent to a seasonal. Core receive preference when assigning hours, then mid-level, and then seasonal and extra. I explained that availability was also a factor in assigning hours, the longer a shift and the more days one is available, the more hours they will most likely receive because it is easier to schedule and better meets the needs of the site. I explained that once extended-hours begins, openers and closers are also more useful, since our full-time staff are stretched out into two shifts.

You agreed to extend your availability to 8:30-2:30 and I was able to add a few more days on for you in June. You mentioned that you would like to work 40 hours a pay period, and I told you that I could not guarantee this amount of hours, but that I would give you as many as I could manage while still being fair to all of the staff and their classifications.

You also requested to have more reading materials, so I provided you with a binder that includes all of the village 3-Bay forms. We discussed that they are on the global drive, but I let you know I was unsure if a seasonal employee would be able to have access, but that the binder had all of the information found there. We talked about your training as well, and the fact that as an MPA you came in with most of the knowledge base you would need as an interpreter, and that observing stations and craft skills would be what you needed to focus on for clearing on stations. You mentioned being ready to clear for



EXHIBIT

11

Hill

PENGAD 800-631-6989  SP 4

JYF 0002722

canoe, and I relayed that I have heard you interpret canoe and felt you were ready for clearing on our next day on together, or you could clear with a classified employee.

Thank you for bringing your concerns to my attention, I look forward to seeing you clear on the last few stations and am happy you are enjoying your time in the village. Please don't hesitate to come to me with any concerns in the future as well.

**CC: file**

JYF 0002723

# MEMORANDUM

**TO:**      Laura Hill

**FROM:**   Jamie Lavin

**DATE:**    08/02/12

**RE:**      <u>Follow-Up to Our Meeting on 08/02/12</u>

Thank you for meeting with Todd Johnson and me today in order to clarify some of the concerns you brought to my attention in your e-mail on 07/27/02. During our meeting today we discussed a number of topics and this memo serves as an overview and clarification on those topics. We began by discussing my concern about you taking issues over scheduling and training to Homer Lanier rather than coming to me. I explained that we operate on a system called the chain of command. As your direct supervisor your concerns should be addressed directly with me, if we fail to reach an agreement then the next step in the chain of command would be to go to my direct supervisor, Todd Johnson. You explained that you felt it was necessary, but for future reference we will not operate outside of the chain of command.

We next discussed the definition of a site being short-staffed, since you were concerned that Cindy Daniel and Homer Lanier indicated to you that we were short-staffed when you joined the site. I explained that when it was reported to you that the village was short-staffed, it was in reference to the number of employees collectively working in the village, which was under its usual number. This does not mean that everyone is going to get the number of hours they want all the time, it means that we have to have a certain number of employees to pull from in order to cover vacations, call-ins and other staffing shortages.

We also discussed the differences between core, mid-level, and seasonal employees in regards to assigning shifts on a monthly basis. Your primary job is with On-Site Education, and in the village you are considered an "extra" or seasonal employee. Core and Mid-Level employees receive priority when hours are being assigned, and then extra and seasonal after that. The seasonal assigned hours are based on availability of the seasonal staff members. The length of a shift and the number of days a week that are offered as availability are a factor in



JPF 000114

distributing hours. You re-iterated that you are available for 8:30-3:30 shifts five days a week, but you have to keep in mind that the other seasonal employees do not have these restrictions on shift lengths and days of the week in the summer months. Hours assigned are also influenced by weekend availability, since everyone wants weekends off and we are usually busy on weekends. Weekend coverage is very important, there are a lot of employees that would like to have Sundays off and it's not fair to give it to some and not to others. I am attaching a copy of your employee Work Profile, which you signed, that indicates we expect employees to be available a minimum of 4-6 weekend/holidays a month. If you are unable to comply with this, it will have an effect on your assigned hours.

You mentioned that you spoke with your village colleagues about hours, and that they pointed out to you that they were getting all the hours they wanted. I replied by pointing out to you that you have to look at the individuals own personal situation. Were these colleagues either core or mid-level? Do these colleagues have a different number of hours they prefer to have than you? Is their availability different than yours? You can't judge your situation based on that of other staff members, everyone has different needs and different situations; you should only be concerned about your own situation.

You mentioned that you were concerned that you didn't receive e-mail responses to every e-mail you had sent to me. I explained that this will sometimes happen through verbal communication on days we work together, but you stated you would like written responses, so I agreed that from now on you will always receive a written response since that it the way you prefer to communicate.

You also mentioned that you were concerned that your written documentation on clearings was not up-to-date, I have allotted Carol an off-site day to bring all written documentation up to date to alleviate this and the clearing forms are now ready for you to sign tomorrow during your shift.

I also explained that when Interpretive Services brings on an MPA there is an understanding that the staff member will rely on their MPA training and self initiative, in fact we expect all interpreters to take initiative when it comes job performance. You already had the basic knowledge and hands-on and inquiry skills to perform the job from your five years of MPA service, and a brief time working in the Fort. Cindy provided you with the logistics of Interpretation when she oriented you. You already had all the tools you needed to be a successful interpreter. Assigning of mentors is usually done for brand new employees rather than MPAs, but since you expressed interest in having one I assigned Carol as your mentor, and she has worked to get you cleared on the rest of the stations you needed to be cleared on. There has to be a certain amount of self initiative in the training process, because our training largely consists of observations of other staff on site.

At this point Laura, I consider you to be a fully trained and qualified member of the village staff. I do encourage every interpreter to continue reading and adding to their knowledge base of Powhatan life; there is never a point where everyone knows absolutely everything there is to know. But you have all of the basic knowledge you need to be a successful interpreter in the village. If you ever feel like you require anything to help your job performance in the future please do not hesitate to come to me.

As a recap of our discussion, we agreed that you are fully trained and your paperwork is going to be brought up to speed to accurately reflect this. We also went over your availability, and you indicated that you are available five days a week from 8:30 to 3:30. We discussed that I cannot guarantee any certain number of hours a week or pay period, because our budget is determined largely by visitation trends throughout the year, but as I said I will do my best for you and every other employee's wishes based on what I have to work with. Though I do expect all employees to take initiative, I also would like for you to come to me with any concerns you have so they can be addressed appropriately.

I consider the matters we discussed during our meeting to be closed at this point, and look forward to a productive work relationship from here on. Thank you for coming in to meet with me.

JYF 000016

# MEMORANDUM

**TO:**      Laura Hill

**FROM:**    Jamie Lavin

**DATE:**    11/26/12

**RE:**      <u>Reminders</u>

This memo serves as a reminder about wish list requests as well as a follow-up to our discussion about bringing your children to work on 11/23/12. I have granted your wish list requests for the three major end of the year holidays, Thanksgiving, Christmas Eve and New Year's Eve, and I wanted to remind you that everyone would like holidays off and this will not always be possible. You were one of the few Village employees who were granted the days before and after Christmas off, typically I only grant one of those days to be fair to everyone. Next year, you will most likely be required to work Thanksgiving and Christmas Eve since you had them off this year, as part of the staff rotation for Holiday time off.

I also wanted to follow-up our conversation on 11/23/12 about bringing your children to work with you. On this day you picked your daughter up at lunch and brought her in to spend the afternoon at work with you. It is Foundation policy that you cannot be responsible for watching and caring for your child while on the clock. You need to give your full attention to your job.

Thank you for your attention to the matters and please come see me with any questions you may have.



EXHIBIT

14

Hill

JYF 0002725

14

# MEMORANDUM

**TO:**       Laura Hill

**FROM:**    Jamie Lavin

**DATE:**    06/18/13

**RE:**      <u>Meeting on 6/18/13</u>

This memo serves as a follow up to our meeting on 6/18/13. During this meeting we discussed several issues related to the site including:

- Arriving on site when your shift begins and returning from breaks and lunches in a timely manner.
- Trading shifts and scheduled work days with other staff members on a regular basis.
- Not leaving materials out on site.
- Picking up tours on time.
- Bringing concerns about your co-workers to me in a private setting.

You have had some issues in these areas lately and we agreed that going forward you would:

- Be conscious of the time by arriving on site when scheduled, returning from breaks and lunches on time, and being at the rotunda 10 minutes prior to the start of the orientation tours.
- Make sure to put all materials back where you got them and clean up your work area.
- Bring all concerns about your co-workers to me in a private setting.

Thank you for meeting with me, I look forward to seeing improvement in these areas.



JYF 0000052

# 15

## MEMORANDUM

**TO:**    Laura Hill

**FROM:**  Jamie Helmick

**DATE:**  08/22/2014

**RE:**    <u>Meeting on 8/21/14</u>

This memo serves as a follow up to our meeting on 8/21/14.  During this meeting we discussed the fact that your call-in rate over the past 6 months has been high, you have called in or arrived to work late on 19 separate days since March.  This is unsatisfactory work performance and needs to improve immediately.  From this point on until the end of the year if you call in sick you will need to bring in a doctor's note stating the reason for the absence. Failure to comply will result in further disciplinary action up to and including termination.



EXHIBIT
Helmick
A
tabbies

JYF 0000050

# MEMORANDUM

**TO:**     Laura Hill

**FROM:**   Jamie Lavin

**DATE:**   03/21/14

**RE:**     <u>Follow-Up to our Meeting on 03/20/14</u>

This memo serves as a review of our meeting on 03/20/14. I wanted to meet with you to discuss a few issues that had come to my attention in regards to costuming and customer service. During the meeting I re-iterated the importance of being on-site and ready to interpret when your shift begins in your appropriate costume, as was outlined in the memo I put out on 03/14/14. You explained that you didn't realize you had an issue until you were at work, tried to get it rectified in the costume shop and was unable to, and then got permission from the Duty Officer to go get your appropriate costuming item.

We also discussed that it is policy to not wear make-up/lipstick while in costume and that staff need to wear their costume appropriately, i.e. wearing leggings attached to a band at your waist. We discussed the fact that large round pearls and non-Virginia animals furs, or fake furs, are not appropriate items to be worn on-site. If you need help identifying appropriate pearls or furs please do not hesitate to come see myself, Cindy Daniel, Lara Templin, or Chris Daley for assistance.

We also discussed the fact that it is policy to interpret to any group that approaches you while you are on-site, even if you are on your way somewhere else and do not have an official station set up. As I mentioned, the groups themselves do not know what your intentions are, whether or not you are on your way somewhere else; and we want to avoid any perceptions of poor customer service.

Thank you for meeting with me, please come see me if you have any questions or concerns.



EXHIBIT

Helmick
B